**In re The Marriage of JULIE C., Appellant–Respondent,**

v.

**ANDREW C., Appellee–Petitioner.**

No. 49A05–0909–CV–523.

Court of Appeals of Indiana.

March 30, 2010.

Kimberly A. Jackson, Indianapolis, IN, Attorney for Appellant.

## OPINION

VAIDIK, Judge.

### Case Summary

Julie C. ("Mother") and Andrew C. ("Father") had two children together before divorcing in 2006. The dissolution decree provided that the parties would share joint legal custody of the children with Mother having primary physical custody. In 2008 Father filed a motion to modify physical custody or, in the alternative, parenting

time. Mother filed a response along with a cross-petition for modification of legal custody and child support and a request that the trial court find Father in contempt for failing to pay child support. Mother appeals the trial court's order entered following a hearing. We find that: (1) when modifying custody, the change in circumstances required by Indiana Code section 31–17–2–21 need not be so decisive in nature as to make a change in custody necessary for the welfare of the child and (2) when determining whether to modify joint legal custody, a trial court must consider whether there has been a substantial change in one or more of the factors listed in Indiana Code section 31–17–2–15 as well as Indiana Code section 31–17–2–8. Further finding that the trial court here did not abuse its discretion by making a *de facto* modification to joint physical custody, declining to modify joint legal custody to sole legal custody in Mother, declining to find Father in contempt for failing to pay child support, calculating Father's child support obligation, and declining to award partial or full attorney's fees to Mother, we affirm.

## Facts and Procedural History

The evidence most favorable to the trial court's judgment reveals that Mother and Father married in 1995 and have two children together: J.C., born August 21, 2002, and C.C., born October 15, 2004. When Mother and Father later divorced in 2006, the dissolution decree, agreed to by the parties, provided that they would share joint legal custody of J.C. and C.C. with Mother having primary physical custody. The decree further provided that Father would exercise parenting time every Monday, Wednesday, and Friday from 4:30 p.m. to 7:15 p.m. and every other weekend.

It also provided: "Once [C.C.] turns the age of three (3), the parties agree to parenting time for the Father of one night a week and every other weekend with the children pursuant to the Indiana Parenting Time Guidelines." Appellant's App. p. 15. When C.C. turned three, Mother and Father did not change Father's parenting time because of Mother's work schedule and because Father did not want a span of six days at a time when he would not see J.C. and C.C.

In September 2008 Father filed a Verified Motion for Modification of Physical Custody or in the Alternative for Modification of Parenting Time, which requested increasing the amount of time he was permitted to spend with J.C. and C.C. Specifically, Father proposed having J.C. and C.C. each Monday through Wednesday morning and every other weekend, including Sunday nights. Mother then filed a response, a Cross–Petition for Modification of Legal[1] Custody and Child Support, and a Verified Affidavit for Contempt for Father's failure to pay child support. In October 2008, when C.C. was just shy of her fourth birthday, Mother sent Father an email informing him that he was to begin exercising his parenting time one night a week and every other weekend, with the exception of the children attending church with Mother on Sunday mornings. Tr. p. 30–31.

Upon request of the trial court, Domestic Relations Counseling Bureau ("DRCB") evaluator Robin Leffler–Pannell prepared a report. Regarding J.C.'s and C.C.'s interaction and interrelationship with Father's fiancée Nicole W., the DRCB report states, "[Father] opined the children both love [Nicole] and engage in activities and are affectionate with her." Appellant's

---

1. The title of Mother's cross-petition actually indicates a request for modification of physical custody, *see* Appellant's App. p. 29; however, the pleading is clear that Mother is asking for a modification of legal custody.

App. p. 47. It further states, "[J.C.] described [Nicole] as 'nice,' but complained that her son . . . is 'a bully to me,' and described [Nicole's daughter] as 'nice.' [J.C.] said his father and [Nicole] talk to [Nicole's son] and put him in time-out." *Id.* at 46. Regarding J.C.'s wishes, the report states, "[J.C.] expressed a desire to spend more time with his father because, 'I am always with [M]om.'" *Id.* The DRCB report recommended that Mother and Father continue to share joint legal custody and that the children continue to reside in Mother's primary care. The DRCB report also recommended that Father have greater parenting time than that stipulated by the Indiana Parenting Time Guidelines.

Nicole has joint physical custody of her two children. She has them each Monday through Wednesday morning and every other weekend. At the hearing, Nicole testified, "I think it's going to be really important for us to have all four of our kids together so they can actually bond together more and be more of a family." Tr. p. 23. Father testified, "The very most important thing is that I would like to have fifty percent of the time with my kids and with this building of a family I think they should be part of that so they don't have to feel like outsiders to the family." *Id.* at 40. DRCB evaluator Leffler–Pannell was asked, "Is it beneficial in a blended family, as a general proposition, for the children to have the same nights together? . . . [W]ould it make sense for [Father]'s children to be with them on . . . Monday and Tuesday so they can spend time with their step-siblings?" *Id.* at 7. She responded that it depends on "the children's adjustment to everything," *id.,* that J.C. and C.C. appeared to be well-adjusted, and that "it's generally fine to help the kids get adjusted to the blended family by having them spend time together," *id.* at 8.

Nicole was asked how the four children interacted with each other:

Q And have there been any, what you would consider problems in integrating these two families?

A With [my daughter] and [C.C.], they get along very well. [C.C.] is very enamored with [my daughter] and [my daughter] really thinks that's pretty great herself. So they do well together.

Q [Your daughter] is nine and [C.C.] is what, four?

A Four. So there's no competition there.

Q Okay.

A With [J.C.] and [my son], they're eight or nine months apart, so they are the same age and, um, they're boys, so there definitely, sometimes there's sharing issues and a little bit of competition over [Father]'s attention and over my attention and that has gone back and forth over the last several months. So, there are times when they get along really well and play really great together and there are times when they don't.

Q What do you do to help them when they're having a problem?

A Well, we both have talked to each of the kids individually as well as together, all four of us. Our consistent message with them is that they don't have to be best friends, they don't have to play together all the time; we don't expect that out of them. But when they want to play together and they want to have fun together, they do so. And if one of them wants to do something on their own then the other one needs to respect that. And since we've had those conversations it's gotten a lot better. And we let them know that above all else they have to respect one another and be nice to each other. But, that doesn't neces-

sarily mean they have to do exactly what the other one does all the time. *Id.* at 17–18.

Father testified about, among other things, the health insurance he provides for J.C. and C.C., his communication with Mother, and the payments he owed Mother. Father testified that he pays $54 in weekly health insurance premiums for the children. *Id.* at 47. Although Mother and Father agreed that communication between them is difficult, Father testified that they "communicate best through email" and are fairly prompt in responding to each other's email messages. *Id.* at 61.

Father testified that he filed for bankruptcy in January 2009 and agreed he owed Mother two child support payments totaling $560. However, regarding any other fees Mother claimed he owed, he either maintained that he paid them or disagreed that they were owed. *Id.* at 48. When asked why he failed to pay the $560 before the hearing, he responded, "I have been doing my best to get financially squared away." *Id.* at 59. He also testified that he voluntarily paid the tuition for J.C. and C.C. although the dissolution decree did not require him to do so:

A When [J.C.] started preschool, [Mother] and I shared that expense. She came to me and said I know that you make more with your new job so rather than going back to Court and redoing child support, why don't you take on the expense of [J.C.]'s tuition. I didn't feel it was right for him to come out of school halfway through the year so I agreed to that and that has just been the supposition for the last three years.

Q And that's how you ended up paying for [C.C.]'s also?

A Correct.

*Id.* at 43–44. When asked whether he would have caught up on support if he had stopped paying for school, Father replied, "Indeed." *Id.* at 63. Father further testified that he voluntarily pays other expenses of the children:

Q All right. Aside, from the children's school tuition that you have paid voluntarily, have there been other things that you've contributed to financially for the children?

A There have been off and on times where [Mother] will say [J.C.] needs a new coat or [J.C.] needs new shoes, or [C.C.] needs new shoes; can you take care of that. Also, [J.C.]'s- kind of the standard regimen has been that I'll take care of [J.C.]'s hair. So, every six weeks [J.C.] goes in for a hair cut and I take him to that and which I have been fine doing because it's stuff for the kids.

*Id.* at 48.

The trial court issued its Orders Regarding Custody, Parenting Time, Support, and Contempt. Upon Mother's petition for clarification, the trial court issued amended orders, which provide in pertinent part:

1. The Court considered all evidence presented, including The DRCB Report and information from the in camera interview of [J.C.].

2. Both parents love their children and want them to be well adjusted. The children are well adjusted, and interact positively with both parents, including Father's fiancé[e], Nicole. While there have been some initial adjustments to Nicole's children, the parties' children are integrating well with Nicole and her children.

3. There has been a substantial change in circumstances and the facts set forth in I.C. 31–17–2–21. Further, it is in the best interests of the children, [J.C.] and [C.C.], that the parties continue to share

joint legal custody and that Father have additional overnight parenting time.

4. Father shall have overnight parenting time with the children following school on Monday until he drops them off at school and/or Mother's home (whichever is applicable) on Wednesday morning. Father shall pick the child(ren) up from school and/or Mother's home (whichever is applicable) on Monday afternoon. Mother would have both children on Wednesday (after Father's parenting time has concluded) through Friday afternoon. The parties shall alternate weekend parenting time. On Father's weekends he shall pick up the child(ren) on Friday after school and/or from Mother's home (whichever is applicable) and return the child(ren) to school or Mother's home (whichever is applicable) on Monday morning. The Court notes that [J.C.] is in school full-time, except for holidays, summer break, school breaks and early release days. The Court further notes that [C.C.] attends preschool and an extended care program several days a week. Therefore, Father may pick up and drop off [C.C.] at school on the days she is attending school and he has parenting time in the same way that he does with [J.C.].

\*       \*       \*       \*       \*       \*

7. Father ... pays $54.00 for health insurance for the children....

\*       \*       \*       \*       \*       \*

10. Due to the modification of Father's parenting time, child support must also be modified. Father shall pay $118.00 per week in child support via an Income Withholding Order through the Indiana State Central Collection Unit....

11. Father has a support arrearage of $560.00 (as of March 23, 2009), which amount shall be repaid at the rate of $10.00 per week.

12. Each party shall pay their own attorney's fees.

Appellant's App. p. 9–10, 11. Mother now appeals.

## Discussion and Decision

Mother argues that the trial court abused its discretion by: (I) making a *de facto* modification to joint physical custody and declining to modify joint legal custody to sole legal custody in Mother; (II) declining to find Father in contempt for failing to pay child support; (III) giving Father credit for his own health insurance coverage when calculating his child support obligation; and (IV) declining to award partial or full attorney's fees to Mother.

We initially note that Father did not file an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing arguments for him, and we apply a less stringent standard of review with respect to showings of reversible error. *Zoller v. Zoller*, 858 N.E.2d 124, 126 (Ind.Ct.App. 2006). That is, we may reverse if the appellant establishes prima facie error, which is an error at first sight, on first appearance, or on the face of it. *Id.*

When the trial court enters findings *sua sponte*, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *Brinkmann v. Brinkmann*, 772 N.E.2d 441, 444 (Ind.Ct.App.2002). The specific findings will not be set aside unless they are clearly erroneous, and we will affirm the general judgment on any legal theory supported by the evidence. *Hanson v. Spolnik*, 685 N.E.2d 71, 76 (Ind.Ct. App.1997), *trans. denied.* A finding is

clearly erroneous when there are no facts or inferences drawn therefrom that support it. *Id.* at 76–77. In reviewing the trial court's findings, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* at 77. Rather, we consider only the evidence and reasonable inferences drawn therefrom that support the findings. *Id.*

## I. Custody

Mother contends that the trial court abused its discretion because its "increase of [Father]'s parenting time to 50 percent of all parenting time amounted to a *de facto* award of joint physical custody." Appellant's Br. p. 11. Mother also contends that the trial court abused its discretion in failing to award her sole legal custody.

### A. Physical Custody

■ Mother asserts that the trial court abused its discretion by ordering a *de facto* modification of custody to joint physical custody. Although it appears that the trial court only increased Father's parenting time, *see* Appellant's App. p. 10 ("[I]t is in the best interests of . . . [J.C.] and [C.C.] . . . that Father have additional overnight parenting time."), 11 ("Due to the modification of Father's parenting time, child support must also be modified."), we find that an increase to fifty percent of all parenting time amounts to a modification of physical custody. The dissolution decree provided Mother with primary physical custody and Father with parenting time each Monday, Wednesday, and Friday afternoon and every other weekend until C.C. turned three, at which time Father was to have parenting time one night a week and every other weekend. The trial court subsequently awarded Father parenting time each Monday and Tuesday (with J.C. and C.C. to be dropped off at school or returned to Mother's home on

Wednesday mornings) and every other weekend (including Sunday nights). We conclude that when the trial court increased Father's parenting time to seven overnight stays during any given two-week period, it ordered a *de facto* modification of custody to joint physical custody.

■ We review custody modifications for abuse of discretion, with a preference for granting latitude and deference to our trial judges in family law matters. *Kirk v. Kirk,* 770 N.E.2d 304, 307 (Ind.2002). In the initial custody determination, both parents are presumed equally entitled to custody, but a petitioner seeking subsequent modification bears the burden of demonstrating that the existing custody should be altered. *Id.* When reviewing a trial court's decision modifying custody, we may not reweigh the evidence or judge the credibility of the witnesses. *Browell v. Bagby,* 875 N.E.2d 410, 412 (Ind.Ct.App. 2007), *reh'g denied, trans. denied.* Instead, we consider only the evidence most favorable to the judgment and any reasonable inferences therefrom. *Id.*

Indiana Code section 31–17–2–21 provides that a trial court may not modify a child custody order unless (1) the modification is in the best interests of the child and (2) there is a substantial change in one or more of the factors that the court may consider under Indiana Code section 31–17–2–8. Section 31–17–2–8 provides that the trial court is to consider all relevant factors, including:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian....

■ Mother argues that Father's upcoming marriage did not itself constitute a change in circumstances sufficient to support a change in custody, Appellant's Br. p. 8, and we agree. However, when a subsequent marriage occurs in conjunction with other substantial changes in the factors under Section 31–17–2–8, they may together constitute a substantial change in circumstances. *See Bryant v. Bryant*, 693 N.E.2d 976, 979 (Ind.Ct.App.1998), *reh'g denied, trans. denied.* We find such additional substantial changes here. The evidence shows that Father wants to spend more time with J.C. and C.C., J.C. wants to spend more time with Father,[2] and J.C. and C.C. are forging new relationships with Nicole and her children to accomplish a blended family. Further, we note that the trial court conducted an in camera interview with J.C. on the same day as the hearing. While the record gives no indication of what was said during the interview, we presume the trial court gave it due consideration when making its order.

Mother contends that Father's desire to spend more time with J.C. and C.C. was prompted by his personal financial considerations and should in any event be offset by Mother's wish that physical custody and parenting time remain the same, that DRCB evaluator Leffler–Pannell did not view J.C.'s wish to spend more time with Father as significant enough to justify joint physical custody, that there was little evidence of Nicole's relationship with J.C. and C.C., that Father and Nicole "minimized the bullying that J.C. was experiencing," Appellant's Br. p. 17, that Father's clinical depression should weigh in favor of Mother retaining primary physical custody, and that joint physical custody would diminish the stability of the children. We find these contentions to be nothing more than invitations to reweigh the evidence.

■ Mother then claims that "[t]he change in circumstances must be 'so decisive in nature as to make a change in custody necessary for the welfare of the child.'" Appellant's Br. p. 18 (quoting *In re Paternity of Winkler*, 725 N.E.2d 124, 127 (Ind.Ct.App.2000)). Our Supreme Court has said,

---

**2.** J.C.'s desire to spend more time with Father is entitled to some consideration by the trial court even though he is not yet fourteen years of age. *See Sabo v. Sabo*, 858 N.E.2d 1064, 1070 (Ind.Ct.App.2006) ("[T]he statute does not direct courts to discount entirely the wishes of children under the age of fourteen. It merely provides that a child's wishes are to be given *more* weight in the court's balancing of factors if the child is at least fourteen years."). Although the statute at issue in *Sabo* was Indiana Code section 31–14–13–2, which is applicable to determining custody in paternity proceedings, we note it contains language nearly identical to Section 31–17–2–8, which is applicable to determining custody in dissolution proceedings. *See Walker v. Nelson*, 911 N.E.2d 124, 128 n. 2 (Ind.Ct.App. 2009). We further note that although *Sabo* discussed Section 31–14–13–2, the case dealt with determining custody following dissolution. The general proposition remains the same; that is, the wishes of children under fourteen years of age are entitled to some consideration.

A trial court may modify a custody arrangement only upon 'a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable.' Ind.Code Ann. § 31-1-11.5-22(d) (West Supp. 1991). This is a codification of our case law, which requires a change in circumstances so decisive in nature as to make a change in custody necessary for the welfare of the child.

*Lamb v. Wenning,* 600 N.E.2d 96, 98 (Ind. 1992) (footnote omitted) (citing *Poret v. Martin,* 434 N.E.2d 885, 888 (Ind.1982) ("The words 'substantial and continuing,' with reference to the change of condition [in Section 31-1-11.5-22(d)] are merely a rephrasing of our case law requirement that it be of a 'decisive nature'; and the requirement that it 'make the existing order unreasonable' is no different than the case law requirement that the change be 'necessary for the welfare of the child.' ")). However, our legislature subsequently amended Section 31-1-11.5-22(d) in 1994 and removed the requirement of unreasonableness.[3] Thus, a petitioner is no longer required to show that an existing custody order is unreasonable before a court will modify it. *Meade v. Levett,* 671 N.E.2d 1172, 1176 n. 2 (Ind.Ct.App.1996); *Van Schoyck v. Van Schoyck,* 661 N.E.2d 1, 5 (Ind.Ct.App.1996), *trans. denied.* As the decisive-in-nature language is intertwined with the requirement of unreasonableness, and unreasonableness is no longer required in light of the 1994 amendment, the change in circumstances required by Sec-

tion 31-17-2-21 need not be so decisive in nature as to make a change in custody necessary for the welfare of the child. *Joe v. Lebow,* 670 N.E.2d 9, 20 (Ind.Ct.App. 1996). Rather, the change in circumstances must be substantial. The trial court so found.

Mother then asserts that, even if a substantial change in circumstances existed, the trial court abused its discretion because its order required more transitions for the children when both parties agreed that limiting transitions were in the children's best interests. We disagree that the order results in more transitions for the children. The transitions are far fewer than when Father had the children every Monday, Wednesday, and Friday afternoon and every other weekend and the same as when Father had the children one night a week and every other weekend.

As a final argument regarding physical custody, Mother spends two pages of her appellate brief detailing how Father has waived much of the parenting time granted by the trial court. Appellant's Br. p. 21-22. This argument relies on evidence not in the record, and we thus decline to address it.

Considering Father's wish to spend more time with J.C. and C.C., J.C.'s wish to spend more time with Father, and J.C.'s and C.C.'s interaction and interrelationship with Nicole and her children, we find sufficient evidence supporting the trial court's conclusion that there has been a substan-

---

3. Before the 1994 amendment, the statute read in pertinent part:

The court in determining said child custody, shall make a modification thereof only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable.

Ind.Code § 31-1-11.5-22(d) (1993). The amended version reads:

The court may not modify a child custody order unless:
(1) it is in the best interests of the child; and
(2) there is a substantial change in one (1) or more of the factors which the court may consider under section 21(a) of this chapter.

Ind.Code § 31-1-11.5-22(d) (Supp.1994).

tial change in circumstances[4] and that modification of physical custody is in the best interests of the children.[5] Mindful of the substantial deference we accord our trial courts in family law matters, we cannot say the trial court abused its discretion by modifying physical custody of J.C. and C.C.

### B. Legal Custody

Mother also contends that the trial court abused its discretion by failing to modify joint legal custody to sole legal custody in Mother. As with modifications of physical custody, a trial court may not modify legal custody unless (1) the modification is in the best interests of the child and (2) there is a substantial change in one or more of the factors that the court may consider under Indiana Code section 31–17–2–8 when it originally determines custody. *See* Ind.Code § 31–17–2–21; *Kanach v. Rogers*, 742 N.E.2d 987, 989 (Ind. Ct.App.2001). Nonetheless, another panel of this Court has stated that when considering a modification of joint legal custody, we must determine whether there has been a substantial change in one or more of the factors listed in Indiana Code section 31–17–2–15, not Section 31–17–2–8. *Carmichael v. Siegel*, 754 N.E.2d 619, 635 n. 7 (Ind.Ct.App.2001) ("[W]hen considering the appropriateness of joint *legal* custody, the relevant factors are listed in Indiana Code Section 31–17–2–15, not sections 8 or 8.5, which are relevant to *physical* custody determinations. Thus, strictly speaking, the standard for modifying custody in section 31–17–2–21 does not apply

to modifications that affect legal custody only."). Section 31–17–2–15 provides:

In determining whether an award of joint legal custody under section 13 of this chapter would be in the best interest of the child, the court shall consider it a matter of primary, but not determinative, importance that the persons awarded joint custody have agreed to an award of joint legal custody. The court shall also consider:

(1) the fitness and suitability of each of the persons awarded joint custody;

(2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;

(5) whether the persons awarded joint custody:

(A) live in close proximity to each other; and

(B) plan to continue to do so; and

(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

We believe the view expressed in *Carmichael* has merit and can be harmonized with Section 31–17–2–21. The list of factors a trial court may consider when deter-

---

**4.** Recognizing that the record is silent as to C.C.'s wishes, we still conclude that there has been a substantial change in circumstances as to C.C.

**5.** Because we have concluded that the trial court ordered *de facto* joint physical custody, we construe the trial court's statement that it

is in the best interests of the children for "Father [to] have additional overnight parenting time," Appellant's App. p. 10, as concluding that modification of physical custody is in the best interests of the children. This is especially so given that the trial court cited Indiana Code section 31–17–2–21.

mining whether to modify custody is a nonexhaustive list. Ind.Code § 31–17–2–8 ("The court shall consider all relevant factors, including the following. . . ."). Relevant to whether a court should modify joint legal custody to sole legal custody is whether there has been a substantial change in one or more of the factors the trial court considered when making the initial award of joint custody. We conclude that a trial court must also consider the factors listed in Section 31–17–2–15 when determining whether a joint legal custody arrangement should be modified.

Particularly germane to whether joint legal custody should be modified is "whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare." Ind.Code § 31–17–2–15(2). Here, the trial court found that it was in the best interests of J.C. and C.C. that Mother and Father continue to share joint legal custody. Although Mother highlights instances where she and Father were unable to communicate and cooperate regarding the children, the trial court was entitled to give more weight to Father's testimony that they communicate best through email and respond fairly promptly to each other. Mother also asserts that Father "exhibited far less stability in his life and had engaged in substantial poor decision making." Appellant's Br. p. 26. The trial court is in the best position to weigh the evidence and assess witness credibility, and we cannot say that it abused its discretion by failing to modify joint legal custody to sole legal custody in Mother.

## II. Contempt

■■■ Mother also contends that the trial court abused its discretion by declining to find Father in contempt for failing to pay child support. A determination of whether a party is in contempt of court is a matter within the trial court's sound discretion, and we reverse only where there has been an abuse of that discretion. *Richardson v. Hansrote*, 883 N.E.2d 1165, 1171 (Ind.Ct.App.2008), *reh'g denied*. Our review is limited to considering the evidence and reasonable inferences drawn therefrom that support the trial court's judgment. *Piercey v. Piercey*, 727 N.E.2d 26, 31 (Ind.Ct.App.2000). To hold a party in contempt for violation of a court order, the trial court must find that the party acted with willful disobedience. *Sutton v. Sutton*, 773 N.E.2d 289, 297 (Ind.Ct.App. 2002). Simply establishing the existence and knowledge of an arrearage may not amount to willful disregard of a court order. *Id.* Where the trial court has declined to find a party in contempt, we reverse only where there is no rational basis for the trial court's action. *Heagy v. Kean*, 864 N.E.2d 383, 386 (Ind.Ct.App. 2007), *trans. denied.*

We find a rational basis for the court declining to find Father in contempt. The evidence most favorable to the court's order shows that Father was only $560 in arrears, was trying to get his financial affairs in order, and more pertinently, paid expenses of the children not required in the dissolution decree, including J.C.'s and C.C.'s tuition. Mother's argument regarding Father's actions since the entry of the order asks us to impermissibly review evidence not in the record. The trial court did not abuse its discretion.

## III. Child Support

■■■ Mother next argues that the trial court abused its discretion when calculating Father's child support obligation. She first contends that the trial court abused its discretion by giving Father credit for his own health insurance coverage when calculating his child support obligation. Next, she contends that Father has waived much of the parenting time given by the trial court and thus the court's child sup-

port calculation gives Father credit for time that Mother cares for the children. We address only her first argument as the second asks us to impermissibly rely on evidence not in the record.

■■■ Decisions regarding child support generally rest within the sound discretion of the trial court, and we will reverse the trial court's decision only for an abuse of discretion or if the trial court's determination is contrary to law. *D.W. v. L.W.*, 917 N.E.2d 725, 727 (Ind.Ct.App. 2009). The Indiana Child Support Guidelines provide that, generally, a parent should receive a health insurance credit in an amount equal to the premium cost the parent actually pays for a child's health insurance. *Id.* at 728; *see* Ind. Child Support Guideline 3(E)(2), (G)(3).

The trial court found that Father pays $54 each week for health insurance coverage for J.C. and C.C. Father testified to that effect on direct examination. Mother's request that we look to other portions of Father's testimony asks us to reweigh the evidence.[6] Given our standard of review, we cannot say that the trial court abused its discretion.

### IV. Attorney's Fees

■■ Finally, Mother contends that the trial court abused its discretion by declining to award her partial or full attorney's fees. In post-dissolution proceedings, the trial court may order a party to pay a reasonable amount for attorney's fees. *Claypool v. Claypool*, 712 N.E.2d 1104, 1110 (Ind.Ct.App.1999), *reh'g denied*, *trans. denied.* The trial court has broad discretion in awarding attorney's fees. *Id.* Reversal is proper only where the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. *Id.* In assessing attorney's fees, the trial court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors bearing on the reasonableness of the award. *Id.* In addition, any misconduct on the part of a party that directly results in the other party incurring additional fees may be taken into consideration. *Id.*

Mother asserts that Father filed his petition without any "serious discussion" with her of his concerns. Appellant's App. p. 34. However, the record reveals that Father suggested a different parenting time schedule one day when he picked up J.C. and C.C. from Mother's home and made another offer to change parenting time after that. Tr. p. 62. In response to Father's suggestions, Mother said that she was only willing to give Father the parenting time provided by the Indiana Parenting Time Guidelines. *Id.* Father testified that he did not talk with her after that about changing his parenting time because "I don't believe that [Mother] would have-was in the spirit of compromise and in the spirit of negotiation so there wasn't much point." *Id.* at 63. The record thus reveals that Father did in fact attempt to engage Mother on the issue.

Mother also alleges that Father's primary motive for petitioning for modification was to reduce his child support obligation. She also alleges that Father was delinquent in his child support payments, failed to cure the delinquency before the hearing, wrote bad checks to Mother, and that these actions prompted her to file the contempt action. She further emphasizes that Father has a higher income and in-

---

6. Mother refers us to a portion of Father's cross-examination that she claims shows that a portion of the $54 is for Father's health insurance coverage. We read that section to indicate that Father's and the children's health insurance coverage together is $58. Thus, the evidence is uncontroverted that the children's portion of the premiums is $54.

curred lower attorney's fees than Mother. These arguments are merely invitations to reweigh the evidence. As for Mother's argument that she had to defend an action which ultimately gave Father more time with J.C. and C.C. even though he has subsequently waived much of that time, she asks us to impermissibly rely on evidence not in the record.

The trial court's order does not indicate why it declined Mother's request for attorney's fees. However, the evidence establishes that Father was struggling with his own financial issues while these proceedings were pending, which alone was a proper basis upon which to decline Mother's request. We find no abuse of discretion in the trial court's failure to award Mother attorney's fees.

Affirmed.

RILEY, J., and CRONE, J., concur.