## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 07 2018, 11:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Debra Lynch Dubovich
Levy & Dubovich
Merrillville, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re the Marriage of: | December 7, 2018 |
| C.E., f/k/a C.P., | Court of Appeals Case No. 18A-DC-1440 |
| *Appellant-Respondent,* | Appeal from the Lake Superior Court |
| v. | The Honorable Nanette K. Raduenz, Special Judge |
| J.P., | Trial Court Cause No. 45D05-1706-DC-80 |
| *Appellee-Petitioner* | |

**Baker, Judge.**

[1] C.E. (Mother) appeals the trial court's order regarding the parenting time arrangement between Mother and J.P. (Father). Mother argues that (1) the trial court's order is a de facto modification of physical custody that neither parent requested; and (2) the parenting time arrangement is erroneous because it increases the contact between the parents in a high conflict relationship. We agree with Mother's first argument. Therefore, we reverse and remand for further proceedings.

## Facts

[2] Mother and Father were married and have four children together. Two of the children are over the age of eighteen and are not relevant to this appeal; the other two are K.P., born in 2003, and A.P., born in 2006. Mother and Father divorced in 2012. Their Marital Settlement Agreement, which was approved by the trial court on February 15, 2012, provided that the parents would share joint legal custody, was silent as to physical custody, and awarded Father parenting time as follows: overnight parenting time every Wednesday, every other weekend, and occasionally every other Thursday, with some extra time during the summer months. He was credited for 149 overnights per year on the child support worksheet; Mother had the remaining 216 annual overnights.

[3] Mother and Father have struggled to co-parent without significant conflict. A guardian ad litem (GAL) was appointed for the children in June 2011 and remains in place. A Level II Parenting Time Coordinator (PTC) was appointed in March 2014 and remains on the case. Mother and Father were ordered to

participate in therapeutic counseling in March 2014; they complied and continue to participate. The trial court found that "[i]t is undisputed that there continues to be chronic anger and distrust between the parties," that the parents are unable to communicate in person, and that this conflict has "placed the children's well-being at risk," creating "anguish and stress in the lives of the children." Appealed Order p. 4.

[4] After years of disagreeing about parenting time and other issues, on May 16, 2017, Mother and Father entered into a Partial Mediated Agreement. That agreement states that the original Settlement Agreement granted "Mother primary physical custody" of the children. Appellant's App. Vol. II p. 86. The Mediated Agreement resolved multiple issues, including summer parenting time, but did not modify the physical custody arrangement as the parties understood it to be, which was that Mother was the primary physical custodian.

[5] The trial court held a hearing that began on January 11, 2018. At that time, the following petitions were pending:

- Father's petition for sole legal custody and rule to show cause;
- Mother's petition to modify legal custody and parenting time; and
- Mother's petition for contempt citation and rule to show cause.

None of the pending petitions requested a change of physical custody, nor did either party make that request orally.

[6] On February 22, 2018, the trial court issued an order on the pending petitions. In pertinent part, it found as follows:

3.      Since the entry of the [Dissolution] Decree, there has been a substantial change in one or more of the factors that the court may consider under I.C. § 31-17-2-8, and modification of the existing orders is in the best interest of the minor children.

***

5.      Mother seeks sole legal and physical custody of the children. Contrary to the allegations in his Petition, Father testified that he believes the physical custody arrangement is sustainable, but Father seeks the authority to make all final decisions regarding child related issues.

6.      . . . [T]he Court finds that it is in the best interest of the minor children that the parties continue to share joint legal custody. The same cannot be said for the shared parenting time arrangement that has evolved since the Decree was entered.

7.      The shared parenting time arrangement is one of two primary reasons for the high conflict relationship. There have been numerous attempts to interpret orders and to equalize the parties' time with the children. The result has been that parenting time has become a commodity. Time has become a tangible thing and each party expects an exact equal share, down to the minute; the focus has somehow shifted to a parental right rather than what is best for the children. . . .

Appealed Order p. 3-4. The trial court vacated the current parenting time arrangement and implemented a plan wherein each parent has the children

seven out of every fourteen days and each parent has additional transportation obligations during the other parent's parenting time. Specifically:

> . . . Father shall be responsible for transporting the children to all health care related appointments and all religious training, even if the appointment or practice is during Mother's on-duty week. . . .

> . . . Mother shall be responsible for transporting the children to all extra-curricular activities, even if the activity or event occurs during Father's on-duty time.

*Id.* at 9-10. The trial court intended to fashion a Parallel Parenting Plan, which may be put in place for high conflict families pursuant to the Parenting Time Guidelines. The trial court found that no party was at fault more than the other for the conflict, that both parties love all the children equally, and that neither party behaved in an unreasonable or irrational manner.

With respect to legal custody, the trial court found that the "second major reason for the parties' high conflict relationship is the parties' inability to make joint decisions regarding major issues in the children's lives, such as medical care, religious training, educational decisions and extra-curricular activities." *Id.* at 5. The trial court observed that each parent has his or her own strengths:

> . . . Father, for example, is more cognizant of the financial aspects of health care for the minor children and the importance of traditions such as religious training. . . .

> Mother, on the other hand, has a better understanding of the children's desires and interests regarding activities and school functions. . . .

*Id.* at 5-6. In the end, the trial court ordered that the parties continue to share joint legal custody and should discuss issues related to major decisions regarding the children. But if they are unable to agree, "the custody order should be modified to allow Father to make the final decisions regarding all health care issues and matters involving religious upbringing. Mother should be allowed to make the final decisions regarding education and extra-curricular activities for the minor children." *Id.* at 6.

Mother filed a motion to correct error. In pertinent part, she argued that the trial court's order changed her role as primary physical custodian by dramatically increasing the amount of parenting time awarded to Father— which neither parent had requested. She also contended that the purpose of a Parallel Parenting Plan is to decrease the amount of contact between the parents, but that the trial court's parenting time order actually *increased* the frequency of their interactions. On June 5, 2018, the trial court denied the motion to correct error. In pertinent part, it found that its order did not modify physical custody:

> The Decree and Marital Settlement Agreement . . . were silent as to physical custody. The Marital Settlement Agreement awarded the parties joint legal custody with a shared parenting arrangement. Over a period of six years the shared parenting arrangement went through multiple changes and/or interpretations. The Court found that the shared parenting arrangement that had evolved was no longer in the best interest of the minor children.

Appellant's App. Vol. II p. 16. The trial court also found that implementing a Parallel Parenting Plan was not erroneous and that even if its plan "did create a situation where the parties now have more contact, this does not render the Court's order contrary to the intent of Section IV of the Indiana Parenting Time Guidelines." *Id.* at 17. Mother now appeals.

## Discussion and Decision

[9] Mother appeals the portion of the trial court's order modifying the parenting time arrangement. She argues that it was an improper de facto modification of physical custody that neither parent requested and that the mechanics of the new parenting time arrangement defeat the purpose of a Parallel Parenting Plan.

[10] We initially note that Father did not file an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing arguments for him and will apply a less stringent standard of review with respect to showings of reversible error. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1255 (Ind. Ct. App. 2010). Therefore, we may reverse if the appellant establishes prima facie error, which is an error at first sight, on first appearance, or on the face of it. *Id.*

[11] When the trial court enters findings sua sponte, the specific findings will not be set aside unless they are clearly erroneous. *Id.* A finding is clearly erroneous when there are no facts or inferences drawn therefrom that support it. *Id.* In reviewing the findings, we neither reweigh the evidence nor judge witness

credibility and will consider only the evidence and reasonable inferences drawn therefrom that support the findings. *Id.*

# I. Findings

Before we delve into Mother's primary arguments, we must address her contention that several of the trial court's findings are clearly erroneous.

First:

> Since the entry of the [Dissolution] Decree, there have been at least nine orders or recommendations that have either clarified or modified the terms of the Decree as it pertains to parenting time . . . .

Appealed Order p. 3. The record reveals that under the terms of the original agreement, Father had overnight parenting time every Wednesday, every other weekend, and for some months, every other Thursday (plus one extra week in summer), for a total of 149 overnights per year. Six years later, until the trial court itself modified the arrangement in the order being appealed, Father's parenting time remained *exactly the same*. There were times when the parties agreed to modify smaller, temporary items such as summer parenting time schedules, make-up time, and the right of first refusal, but at no point was the

original parenting plan legally modified. Therefore, this finding was clearly erroneous.[1]

[14] Second: "Mother seeks sole legal and physical custody of the children." *Id.* at 4. Mother was not *seeking* sole or primary physical custody of the children—she already had it. Indeed, the parties had explicitly stipulated to that fact in their partial mediated agreement filed in May 2017, when both Mother and Father agreed that "Mother [has] primary physical custody." Appellant's App. Vol. II p. 86. Therefore, this finding was clearly erroneous with respect to physical custody.

[15] Third: "[c]ontrary to the allegations in his Petition, Father testified that he believes the physical custody arrangement is sustainable . . . ." Appealed Order p. 4. Father's petition did not make any allegations regarding physical custody, nor did Father testify about the parties' physical custody arrangement—because it was not at issue. Instead, the only issue before the trial court was the legal custody arrangement. On that issue, at the hearing, Father withdrew his request to modify joint legal custody, explaining that "I would like to find a way to make joint legal custody work in an efficient manner." Tr. Vol. III p. 79. Therefore, this finding was clearly erroneous.

---

[1] Similarly, the trial court found in its order on Mother's motion to correct error that "[o]ver a period of six years the shared parenting arrangement went through multiple changes and/or interpretations." Appellant's App. Vol. II p. 16. This finding was clearly erroneous for the same reason stated above.

Fourth: "[t]here have been numerous attempts to . . . equalize the parties' time with the children." Appealed Order p. 5. As noted above, at no point was the parenting time arrangement modified to give Father more than 149 overnights per year. The parties negotiated about equalizing their time with the children during the summer months, but there was no evidence in the record that there were any attempts to equalize or restructure their parenting time with the children overall. Therefore, this finding was clearly erroneous.

## II. De Facto Custody Modification

Mother argues that the trial court's order, which stated that each parent would have seven days with the children in every fourteen-day period, is a de facto modification of their physical custody arrangement that neither Mother nor Father requested. We agree.

This Court squarely addressed this issue in *Julie C.*, in which the trial court increased the father's parenting time to 50% of all parenting time but claimed that it had not modified Mother's status as primary physical custodian. 924 N.E.2d at 1256. This Court disagreed, concluding that "when the trial court increased Father's parenting time to seven overnight stays during any given two-week period, it ordered a de facto modification of custody to joint physical custody." *Id.*

Here, as noted above, while the parties' initial settlement agreement was silent as to physical custody, it provided that Mother would have 216 overnights each year to Father's 149. Then, both parents stipulated in their Partial Mediated

Agreement that Mother had primary physical custody of the children. Appellant's App. Vol. II p. 86. Under these circumstances, we have little difficulty concluding that Mother had primary physical custody of the children leading up to the trial court's order in this case.

[20] At no point during any of the litigation over the years has Father asked for a modification of the parties' *physical* custody arrangement. It is well established that a modification of physical custody can only be ordered after a petition to modify has been filed. *Bailey v. Bailey*, 7 N.E.3d 340, 344-45 (Ind. Ct. App. 2014) (reversing a trial court's sua sponte modification of physical custody, also noting that agreeing to a Parallel Parenting Plan does not amount to a concession that the trial court could modify the physical custody arrangement).

[21] The children's GAL agreed with Mother that the trial court's parenting time order was erroneous. In relevant part, the GAL's motion to correct error states as follows:

> It appears that the Court may have been misinformed at the time of trial and led to believe the parties had equal parenting time. This was not the case. . . . There was no petition to modify physical custody pending before the Court. However, this Court's order does modify the physical custody in such a fashion so as to provide more parenting time to Father without regard as to whether he will be available for same and without regard to the children's wishes pursuant to [Indiana Code section] 31-17-2-8. The children in this case are intelligent, well-spoken and well behaved children. Their [GAL] has testified that they do not wish to be more than five (5) days in Father's home. The outcome of the parallel parenting plan has been to create an equal physical custody situation. This may not be in the best

interests of the children, and without a pending petition, the Court may have abused its discretion. Any order to modify physical custody must be preceded by a petition to modify physical custody.

Appellant's App. Vol. II p. 140-41.

[22] As in *Julie C.*, we find that the trial court's order constituted a de facto modification of physical custody. And as in *Bailey*, the trial court modified the physical custody arrangement with no motion to do so filed by either party. Under these circumstances, the trial court's order providing that Father would have 50% of the overall parenting time was erroneous. We therefore reverse and remand for further proceedings.[2]

# III. Parallel Parenting Plan

[23] Because the trial court will again be faced with fashioning a parenting time arrangement for this high conflict family, we are compelled to address Mother's remaining argument, which is that the arrangement fashioned by the trial court defeats the purpose of a Parallel Parenting Plan.

[24] This Court has explained the nature and purpose of Parallel Parenting Plans as follows:

---

[2] We leave it to the parties and the trial court to decide whether a new hearing is warranted, given the passage of time since the original hearing and the rate at which change occurs in the lives of growing children.

Effective March 2013, a provision allowing for the creation of Parallel Parenting Orders was added to the Parenting Time Guidelines. Such orders are intended to minimize the contact between "high conflict parents . . . at least until the parent conflict is under control." [fn 2] Ind. Parenting Time Guidelines, § IV, Scope. To accomplish this goal, Parallel Parenting Orders provide that "each parent makes day-to-day decisions about the child while the child is with the parent" and limits communications between the parents to written or emergency contact only; such orders also are subject to mandatory review every 180 days. *Id.* . . . .

[fn 2] The Parallel Parenting provision also states, "Joint legal custody of children is normally inappropriate in parallel parenting situations." Ind. Parenting Time G., § IV(1). This is consistent with case law observations that joint legal custody should not be awarded when parents cannot communicate and have made child-rearing a "battleground." *See Carmichael v. Siegel,* 754 N.E.2d 619, 635 (Ind. Ct. App. 2001). . . .[3]

*Bailey*, 7 N.E.3d at 344-45.

[25] Here, the trial court found that Mother and Father are high conflict parents and that a Parallel Parenting Plan is warranted. Mother does not dispute this finding, and indeed, we find it to be readily supported in the record.

[26] We sympathize with the challenge that this case presented to the trial court. This is a high conflict family, but neither parent was at fault or unreasonable

---

[3] In this case, Mother has not appealed the trial court's denial of her request for sole legal custody of the children.

and both parents genuinely love their children and are trying to do what they believe is right—they simply can't agree on what "right" is. This is a textbook case for the implementation of a Parallel Parenting Plan. Mother makes a fair point, however, that the arrangement fashioned here arguably defeats the purpose of such a plan, which is to *minimize* contact between the parents.

[27] The trial court ordered that Mother would have to transport the children to and from certain things, even if it is during Father's parenting time, and ordered the reverse for Father. That is new and additional (and regular) contact, which may be contrary to the purpose of Parallel Parenting Plans.

[28] Therefore, on remand, we instruct the trial court to heed the purpose of a Parallel Parenting Plan when it fashions the parenting time arrangement, seeking to minimize the frequency of contact between Mother and Father. We do not intend to bar the creation of a similar arrangement on remand (though this arrangement may be unworkable once parenting time is modified), but we do ask that the trial court do its best to minimize the amount of contact between the parents.

[29] The judgment of the trial court is reversed in part and remanded for further proceedings.

May, J., and Tavitas, J., concur.