## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 15 2020, 8:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Justin R. Wall
Wall Legal Services
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of A.J. (Child Alleged to be in Need of Services) and M.G. (Mother); | April 15, 2020 |
| | Court of Appeals Case No. 19A-JC-2740 |
| M.G. (Mother), | |
| *Appellant-Respondent,* | Appeal from the Wabash Circuit Court |
| v. | The Honorable Robert McCallen, III, Judge |
| The Indiana Department of Child Services, | Trial Court Cause No. 85C01-1712-JC-95 |
| *Appellee-Petitioner* | |

**May, Judge.**

[1] M.G. ("Mother") appeals the trial court's order granting modification of custody of A.J. ("Child") to K.J. ("Father"). Mother argues modification of custody was not in Child's best interests and there had not been a substantial change in circumstances as required by Indiana Code section 31-14-13-2. We affirm.

# Facts and Procedural History

[2] Mother gave birth to Child on November 18, 2012. In October 2014, Mother filed a petition to establish paternity of Child and named Father as a potential father because Mother knew Father for a brief time during the time of Child's conception. A DNA test confirmed paternity, and Father established paternity of Child on February 4, 2015, in Miami County, Indiana. The trial court granted Mother custody of Child and ordered Father to exercise parenting time and pay child support. Father did not exercise parenting time on a regular basis, but he began visiting with Child sporadically around May 2016. Father paid all support as ordered.

[3] On November 30, 2017, the Department of Child Services ("DCS") removed Child and her younger sibling from Mother's home after receiving and substantiating a report that Mother was using illegal drugs. Child and her younger sibling were placed with younger sibling's father ("Stepfather"), who did not live with Mother. On January 5, 2018, at a hearing before the Wabash Circuit Court, Mother admitted Child and her younger sibling were Children in Need of Services ("CHINS"). Father, who lived in Michigan, appeared before

the court on January 5, 2018, and the trial court continued the initial hearing regarding Child's CHINS adjudication to January 26, 2018.

[4]     On January 26, 2018, the trial court held Father's initial hearing regarding Child's adjudication as a CHINS. Father admitted Child was a CHINS. The trial court held the dispositional hearing for Mother and Father the same day. The trial court ordered Mother to engage in homebased services, substance abuse services, and drug screens. The trial court ordered Mother and Father to remain in touch with DCS, maintain safe, suitable housing for Child, maintain legal and consistent employment, and not consume alcohol or illegal substances.

[5]     From January 2018 to March 2018, Father regularly visited Child in her placement with Stepfather. Father provided Child with clothes and offered to help with expenses. Father and Stepfather spoke almost daily and were able to communicate without conflict. Father attended all provider meetings and court hearings, and he contacted DCS as required. During this time, Mother was starting to engage in substance abuse services but was still testing positive for illegal substances.

[6]     On March 8, 2018, Mother filed a motion for change of placement and visitation, asking the trial court to place Child with her or, in the alternative, allow her visitation with Child. On March 15, 2018, Father filed a motion for change of placement, asking the trial court to place Child with him. On March 23, 2018, the trial court held a hearing on Mother's and Father's competing

motions for Child's placement. The trial court granted Father placement of Child, and Child moved with Father to Michigan. Upon adding Child to his insurance policy in June 2018, Father scheduled Child to engage in therapy to address some of her behavioral issues. Father also arranged for Child to get glasses and receive dental treatment.

[7] On September 27, 2018, Father filed a motion for concurrent jurisdiction, asking the trial court in the CHINS case to exercise jurisdiction over the paternity case as well, because the two cases were in separate counties. The trial court granted his motion the same day. On October 17, 2018, Mother requested appellate counsel. The trial court granted her request but she later dismissed the appeal. On November 27, 2018, DCS filed a permanency report with the trial court indicating Mother had moved to Dayton, Ohio, to engage in substance abuse treatment and individual counseling. The report also stated that Mother's drug screens had been negative since July 2018 and that Mother was making progress towards reunification.

[8] Mother moved back to Peru, Indiana, in January 2019. On February 26, 2019, Father filed a motion for modification of custody, asking the trial court to grant him physical and legal custody of Child. On April 14, 2019, Mother began a relationship with a married man, whose wife caused "drama" for Mother. (Tr. Vol. III at 79.) Mother tested positive for non-prescribed Suboxone on March 14, 2019. In the Spring of 2019, while visiting with Mother, Child picked up a hot rock from a fire and burned her hand. After that incident, Father denied

Mother unsupervised visits. Mother subsequently did not see Child for eighteen weeks, and Father reported Child's behavior at home and school improved.

[9] The trial court held bifurcated hearings on the CHINS and custody issues on May 30, 2019, and October 7, 2019. On October 31, 2019, the trial court granted Father custody of Child and allowed Mother supervised parenting time "as she and Father may reasonably agree." (App. Vol. II at 232.) The trial court "admonish[ed] Father to ensure he understands everything required of him under the [Indiana Parenting Time] guidelines such as, without limitation, communication and exchange of information." (*Id*. at 233.) The trial court ordered Mother to pay $20.00 per week in child support. The trial court also stated in its order, "[p]ursuant to I.C. 31-30-1-13, this order shall survive the termination of this CHINS proceeding and shall remain in effect until the Paternity Court (Cause No. 52D01-1410-JP-66) reassumes primary jurisdiction and modifies this Order." (*Id*. at 234.)

# Discussion and Decision

[10] When a party requests modification of custody, we review the court's decision for an abuse of discretion, because we give wide latitude to our trial court judges in family law matters. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1256 (Ind. Ct. App. 2010). A petitioner seeking modification has the burden to demonstrate the existing custody arrangement needs to be altered. *Id*. As we undertake our review, we neither reweigh the evidence nor assess witness

credibility. *Id.* Rather, we consider only the evidence and inferences most favorable to the trial court's judgment. *Id.*

[11] Our legislature has defined the circumstances under which a custody order may be modified following determination of paternity:

> (a) The court may not modify a child custody order unless:
>
>> (1) the modification is in the best interests of the child; and
>>
>> (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 2 and, if applicable, section 2.5 of this chapter.

Ind. Code § 31-14-13-6. The factors the court may consider under Ind. Code § 31-14-13-2 include:

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parent or parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
>> (A) the child's parent or parents;
>>
>> (B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

When granting Father's motion for modification of custody, the trial court found:

> As soon as [Child] was placed with him, Father got her into counseling. Because of Father's pro-active approach to engaging in services for [Child], the local equivalent of the DCS in Michigan felt it unnecessary to recommend any additional services.
>
> Thereafter, Father complied with [Child's] case plan. Mother partially complied with the case plan but she continued to have issues with methamphetamine. Mother relapsed in July of 2018. By all accounts, after that relapse, she has consistently tested negative for any prohibited substances. During the pendency of this action, Mother moved to the Dayton, Ohio area. She testified she did so to change her people, places and things. However, in January of this year she moved back to the area and now lives in Peru, Indiana. The court was sorry to hear she has now returned to the area because it was encouraged by her decision to move away from the area for what the Court believes were all the right reasons. Father has lived in Michigan since the commencement of this proceeding. Mother is now living with a man who, at the time of the last hearing, was still married. His

soon to be ex-wife is apparently a source of strife in he and Mother's current household. Sadly, the chaos in Mother's life continues. To her credit, she has obtained a good job and, under the circumstances, is probably doing the best she can. However, the overarching concern of the Court is [Child's] best interests.

[Child] is thriving in Father's care and the serious behaviors she was displaying following her removal from Mother have, for the most part, subsided.

Eventually, Mother was awarded unsupervised parenting time pursuant to the Indiana Parenting Time Guidelines and, to the extent she was able, she exercised same. After parenting times became unsupervised, Father noticed that [Child] was regressing in her behaviors, which he attributed to unsupervised parenting. As a result, he stopped allowing unsupervised visits. The Court finds that his concerns justified his actions and that he is not in contempt regarding parenting time. The Court further agrees that, at this time, unsupervised parenting with Mother is harmful to [Child's] health and well-being.

Father's Exhibit I[1] reflects that Mother has every intention of attacking him, if given the opportunity. If only she could learn to communicate, in an appropriate manner, her life would likely not be as chaotic as it is. She lives a life of drama. She certainly was not acting in [Child's] best interests when she sent the text.

---

[1] This exhibit is a text message from Mother to Father in which she indicated she would no longer cooperate with Father.

(App. Vol. II at 26-7) (original footnotes omitted) (footnote added).  Mother argues modification of custody was not in Child's best interests[2] and that Father did not prove there was a substantial change in circumstances as to warrant modification.

## 1. Child's Best Interests

[13]  Mother argues the trial court's order granting physical and legal custody of Child to Father is not in Child's best interests as required by Indiana Code section 31-14-13-6 because the trial court "deliberately ignored Father's lack of care and effort to even maintain regular care and contact with Child until March, 2018." (Br. of Appellant at 19-20.)  Mother urges this court to reverse the trial court's modification of custody order because Father did not act in Child's best interests when he was not involved in Child's life prior to the CHINS case and when Father denied Mother parenting time.

[14]  However, Mother's arguments ignore the evidence before the trial court that, although Father was not involved in Child's earliest years, when the CHINS adjudication occurred, Father worked diligently to help Child and provide her with a safe, suitable environment.  Upon placement with Father, Child was immediately engaged with a therapist who assisted Child with numerous

---

[2] Mother also argues DCS was required to prove modification of custody was in Child's best interests, however, it is well settled that the party who petitions for custody modification has the burden of proof to show modification is in Child's best interests.  *See Julie C.*, 924 N.E.2d at 1256 (party who petitions for modification of custody has the burden of proof to show the custody arrangement needs to be altered).  That party here is Father.

behavior problems, which improved over time. Child's therapist testified Child's anxiety increased and some disruptive behaviors resurfaced after unsupervised visits with Mother. Father denied Mother unsupervised visits with Child only after Child burned her had during visitation with Mother. Mother reported Child had "picked up a hot rock that fell out of the fire." (Tr. Vol. III at 49.) Mother's arguments are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See Julie C.*, 924 N.E.2d at 1256 (appellate court does not reweigh evidence or judge the credibility of witnesses). The trial court's findings support its determination that modification was in Child's best interests.

## 2. Substantial Change in Circumstances

[15] Mother argues the trial court abused its discretion when it granted Father's petition for modification of custody because there was not a substantial change in any of the factors listed in Indiana Code section 31-14-13-2. She asserts, "it would appear that the trial court made its decision for Father despite all of Mother's positive actions, DCS and CASA's recommendations, [and] Father's negative actions in thwarting Mother's parenting time and communication." (Br. of Appellant at 24.) Mother contends the trial court focused on her failures during the CHINS case, and not on the facts that she progressed in her journey to sobriety and that she completed the services required by the CHINS dispositional order. She also maintains the text message cited by the trial court "is not an accurate representation of Mother's co-parenting and communication skills." (*Id.* at 23.)

[16] Mother's arguments ignore the evidence presented supporting the trial court's decision. The original custody order was entered in 2015. In 2017, Child was adjudicated as a CHINS based on Mother's drug use. Immediately following adjudicated, Child was placed with Father, who promptly engaged her in therapy. Father presented evidence that Child's behavior improved as a result of therapy.

[17] The trial court noted that Father seemed to provide a stable atmosphere for Child, while Mother continued to engage in activities that made her life chaotic. Child's therapist also testified that Child displayed anxiety when presented with the possibility of moving between Mother and Father on a permanent basis. Mother's arguments are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See Julie C.*, 924 N.E.2d at 1256 (appellate court does not reweigh evidence or judge the credibility of witnesses). The trial court did not abuse its discretion when it granted Father's petition to modify custody of Child. *See Joe v. Lebow*, 670 N.E.2d 9, 26 (Ind. Ct. App. 1996) (modification of custody supported by changes in circumstances regarding child, including placement with non-custodial parent and improvements in child's mental and physical health because of that placement).

## Conclusion

[18] The trial court did not abuse its discretion when it granted Father's petition for modification of custody because modification was in Child's best interests and

there had been a substantial change in circumstances as to warrant modification. Accordingly, we affirm.

[19] Affirmed.

Robb, J., and Vaidik, J., concur.