## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Feb 13 2015, 8:08 am
Kevin S. Smith
CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Scott F. Bieniek | John R. McKay |
| Jeffrey A. Boggess | Hickam & Lorenz, P.C. |
| Greencastle, Indiana | Spencer, Indiana |

### IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jonalyn Miller (formerly Beckham), | February 13, 2015 |
| *Appellant-Respondent,* | Court of Appeals Case No. 60A01-1408-DR-360 |
| v. | Appeal from the Owen Circuit Court |
| Roger Beckham Jr., | The Honorable Lori Thatcher Quillen, Judge |
| *Appellee-Petitioner* | Cause No. 60C01-1302-DR-017 |

**Vaidik, Chief Judge.**

## Case Summary

[1] Jonalyn Miller ("Mother") appeals from the trial court's order granting Roger Beckham Jr. ("Father") primary physical custody of the parties' son. Mother argues that the trial court abused its discretion in finding a substantial change in

circumstances warranting a modification.  Because we find no abuse of discretion, we affirm.

## Facts and Procedural History

Mother and Father were divorced in June 2013.  The parties have one child, H.B., born in December 2008.  The parties' divorce decree granted Mother primary physical custody of H.B.  The parties shared legal custody, and Father exercised regular and frequent parenting time with H.B. immediately following the divorce.

The parties' post-dissolution relationship has been acrimonious.  In September 2013 Father filed an emergency petition to modify custody alleging that Mother had battered him and that she was going to be arrested.  Father also claimed that Mother was being investigated by the Indiana Department of Child Services for allegedly abusing H.B.  Ultimately Mother was not arrested, and the abuse allegation was unsubstantiated.  Then, in February 2014, Father was granted a protective order against Mother.

After a number of delays, the trial court held a hearing on Father's petition to modify custody in June 2014.  At the hearing, Father testified that the parties' relationship continued to be volatile.  He presented evidence in the form of text

messages and voicemails to support this claim.[1]  Father also described a violent parenting-time exchange that occurred before the protective order was issued:

> I went to pick up [H.B.] and she grabbed me around the back of the neck, choking me, pulling my divorce papers out of my back pocket, threw them in . . . the ditch in the snow and I put my son in the truck, the babysitter's husband picked up the papers out of the ditch, handed them to me and I left[.]  [I] went around the corner because she told me that the cops had been called.  I sat there, I called the police dispatch and told them I was sitting there.

Tr. p. 25.  After the protective order was issued, the parties began meeting at the local police department to make parenting-time exchanges.  *Id.* at 21.

Father testified that Mother's abusive behavior was having a negative effect on their son.  *Id.* at 30.  He said that five-year-old H.B. was not eating normally and had lost weight, and Father had made a doctor's appointment for H.B. to "try and get to the bottom of it."  *Id.* at 30-31.  Father said that he believed it would be in H.B.'s best interests to live with him.  *Id.*

Mother testified that she opposed the custody modification.  She acknowledged that she and Father had disagreements and difficulty communicating, *id.* at 76, but she blamed Father for these issues.

---

[1] Though this electronic evidence is referenced in the transcript, the specific wording of the text messages and voicemails is not provided.  *See, e.g.*, Tr. p. 19 ("PETITIONER PLAYS VOICEMAIL.").  This evidence was not included in the appellate record.  Because the trial court relied upon this evidence, it should have been included in both the trial and appellate record.

After taking the matter under advisement, the court granted Father's request to modify custody. The court's detailed order provides, in relevant part:

> 7. [F]ather testified that in addition to the grounds that he alleged in his petition [to modify custody], [he] believes that the aggressive and threatening behavior exhibited by [Mother] toward [Father] has significantly increased since the [divorce], and that [Mother] increasingly causes altercations and arguments with respect to [Father's] visitation with the minor child and his requests therefore.
>
> 8. [T]his Court, on or about May 1, 2014, heard arguments and evidence with respect to a petition for a protective order filed by [Father] against [Mother].
>
> 9. [Father] has requested that the Court take judicial notice of the evidence presented at that hearing as well as the existence of the protective order in this related cause.
>
> 10. At both hearings, [Father] presented voicemail recordings, text messages, and videos, all dealing with [Mother] and her verbal assaults on [Father] and discussions and arguments concerning visitation.
>
> 11. From sometime in January of 2014, [Father] presented a . . . voicemail message left by [Mother] that specified that [Father] would never get additional visitation with [H.B.] unless she agreed to same, and further suggesting that [Father] should absent himself from [H.B.'s] life and that [Mother's] current husband should become [H.B.'s] father. Other voicemail messages played during the hearing[s] . . . consisted of profanity-laced tirades indicating that [Mother] was not fearful of any repercussions for her actions, in at least one instance essentially opining that she did not care even if they were directly from the President of the United States.

Appellant's App. p. 7.

The court also referenced the physical altercation between Mother and Father. *Id.* at 7-8. Having summarized the parties' relationship, the court concluded that a change of custody was necessary:

32. Generally, "cooperation or lack thereof is not appropriate grounds for switching custody." A change in circumstances based on non-cooperation with a custody order impermissibly punishes a parent for non-compliance with a court order.

33. However, egregious acts of misconduct may support a change in custody. [T]he non-custodial parent must demonstrate that the misconduct "places the child's mental and physical welfare at stake."

34. Although there was no medical testimony concerning the mental health of [Mother], the Court is extremely concerned by the pattern of violent and explosive behavior that [Mother] continuously exhibits both in and outside the presence of [H.B.].

35. Specifically, the statements of [Mother] indicating that she does not care about any sanctions for her behavior, and her actions even with full knowledge that she is being videotaped or recorded, seem to indicate a total and callous disregard for the best interest of the child.

36. Likewise, the statement that [Father] should voluntarily absent himself from the life of [H.B.] so that another individual could become his father, particularly in light of the past significant involvement of [Father], is disconcerting at best.

\* \* \* \* \*

38. Taken as a whole, the court believes that the evidence presented demonstrate[s] that [Mother] evidences a pattern of family violence and irrational behavior.

39. Based on the foregoing, this Court believes that there has been a substantial and continuing change in circumstances in one or more of the factors set forth in I.C. 31-17-2-8 and as such believes that a modification of custody is warranted and in the best interest of the minor child.

*Id.* at 9-10 (internal citations omitted).

[9]   Mother now appeals.[2]

# Discussion and Decision

[10]   Mother argues that the trial court erred in finding a substantial change in circumstances warranting a custody modification. We disagree.

[11]   We give wide latitude to our trial courts in family-law matters, and we review a trial court's custody determination for an abuse of discretion. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1256 (Ind. Ct. App. 2010). We neither reweigh the evidence nor assess witness credibility. *Id.* Rather, we consider only the evidence and inferences most favorable to the trial court's judgment. *Id.* The party seeking to modify custody has the burden of demonstrating that the existing custody arrangement should be altered. *Id.* In order to reverse a custody modification, the evidence must positively require reversal, even if the evidence might have supported another conclusion. *See Best v. Best*, 941 N.E.2d 499, 503 (Ind. 2011) (citing *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)).

[12]   Our legislature has defined the circumstances under which a custody order may be modified, providing in relevant part:

> (a) The court may not modify a child custody order unless:
>> (1) the modification is in the best interests of the child; and

---

[2] Mother relocated to South Carolina after the hearing; she currently exercises parenting time with H.B. one weekend each month and during the holidays according to the Indiana Parenting Time Guidelines.

(2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 and, if applicable, section 8.5 of this chapter.

(b) In making its determination, the court shall consider the factors listed under section 8 of this chapter.

Ind. Code § 31-17-2-21.

The factors the court must consider include:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

Ind. Code § 31-17-2-8.

[14]    At the hearing on Father's petition, both parties acknowledged the volatile nature of their relationship. Father, who has a protective order against Mother, produced text messages and voicemails showing that Mother was verbally abusive toward him. Mother had also been physically violent toward him at a parenting-time exchange, during which she grabbed, choked, and threw Father's belongings on the ground—in front of H.B. In recent months, Mother and Father had begun meeting at the local police department for parenting-time exchanges. Father testified that he believed Mother's behavior was having a negative effect on five-year-old H.B., who was not eating normally and had lost weight. This evidence supports the trial court's conclusion that there has been a substantial change in circumstances warranting a custody modification, particularly as it relates to violence between Mother and Father and H.B.'s adjustment to his home. Likewise, this evidence supports the conclusion that a custody modification is in H.B.'s best interests.

[15]    Mother contends that the trial court's modification order is an improper punishment for her behavior. She also claims that Father failed to prove that her behavior has jeopardized H.B.'s mental or physical health. Again, we disagree. The trial court expressly acknowledged that a custodial parent's lack of cooperation or misconduct generally should not result in a custody modification. *See* Appellant's App. p. 9. But the court went on to explain, in detailed and thorough findings, that Mother has repeatedly engaged in abusive behavior toward Father, both in and outside of H.B.'s presence. In other words, this is not an isolated incident of misconduct. Rather, as the court

explained, Mother has shown a "pattern of family violence and irrational behavior" and is not concerned about sanctions for her conduct. *Id.* at 10. Moreover, from the evidence presented—particularly Father's testimony about Mother's physical violence toward him in H.B.'s presence and H.B.'s recent appetite changes and weight loss—the trial court could reasonably conclude that Mother's behavior placed H.B.'s mental and physical welfare at stake. *See Albright v. Bogue*, 736 N.E.2d 782, 790 (Ind. Ct. App. 2000); *Hanson v. Spolnik*, 685 N.E.2d 71, 79 (Ind. Ct. App. 1997), *trans. denied*.

[16] In order to reverse a custody modification, the evidence must *positively require reversal*, even if the evidence might have supported another conclusion. *See Best*, 941 N.E.2d at 503. That is not the case here. We conclude that the trial court did not abuse its discretion in granting Father's request to modify custody.

[17] Affirmed.

Baker, J., and Riley, J., concur.