## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 09 2015, 5:53 am
CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
| --- | --- |
| Katharine Vanost Jones | Jonathan M. Young |
| Evansville, Indiana | Law Office of Jonathan M. Young, P.C. |
|  | Newburgh, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| Andrew M. Shaw, | June 9, 2015 |
| *Appellant-Respondent,* | Court of Appeals Case No. 87A04-1411-DR-527 |
| v. | Appeal from the Warrick Superior Court. |
| | The Honorable Keith A. Meier, Judge. |
| Tera A. Shaw, | Cause No. 87D01-1304-DR-440 |
| *Appellee-Petitioner* | |

**Baker, Judge.**

[1] Andrew Shaw (Father) appeals the trial court's order granting the notice of intent to relocate filed by Tera Shaw (Mother). Father argues that 1) the trial court erred when it allowed Mother to relocate with their child over Father's objection without a hearing; 2) the trial court violated Father's rights under the Servicemembers Civil Relief Act[1] when it denied his motion to enjoin Mother from relocating; 3) the trial court erred in allowing Mother to relocate when it was not in the best interest of Z.L.S.; and 4) the trial court erred when it entered a parenting time order that included an automatic forfeiture provision. We affirm.

## Facts

[2] Father and Mother were married on November 23, 2009. Their marriage produced one child, Z.L.S., born on October 31, 2010. In October 2012, Father, who is a member of the armed forces, was deployed to Korea. On April 12, 2013, Mother filed her petition for dissolution of marriage. On August 29, 2013, the trial court approved the parties' mediated settlement agreement and summary decree of dissolution. According to the agreement, Mother had primary physical custody of Z.L.S., while the parties shared modified joint legal custody, with Mother having the final say after considering Father's input. The agreement provided that when Father returned to Indiana, "the legal custody

---

[1] This Act was formerly known as the Soldiers' and Sailors' Civil Relief Act.

arrangement shall automatically modify to joint custody." Appellant's App. p. 41.

[3] In December 2013, Mother and Z.L.S. flew to the state of Washington to stay with David Brown. Mother took suitcases and Z.L.S.'s puppy with her. Mother and Brown were married on December 13, 2013.[2] On January 8, 2014, Mother filed her notice of intent to relocate, which stated that she intended to relocate to Washington on or about March 7, 2014. At a hearing on July 10, 2014, Mother testified that she did not file her notice of intent to relocate before she arrived in Washington because she did not know that her visit was going to become permanent and that she did not bring her car or most of her personal property with her when she left for Washington in December 2013. Father was deployed overseas when he received the notice of intent to relocate.

[4] On January 24, 2014, Father filed a motion to stay a trial court order modifying child support. On January 31, 2014, the trial court set a hearing date of February 14, 2014. On February 3, 2014, with agreement of the parties, the February 14 hearing date was vacated and reset for June 27, 2014.

[5] Father filed an objection to relocation on February 24, 2014, requesting that Mother be enjoined from relocating pending a hearing. In his objection, however, he did not request a preliminary hearing on the matter nor did he ask

[2] In its order, the trial court states that Mother and Stepfather were married on December 8, 2013, but Mother testified that they were married on December 13, 2013. Tr. p. 68.

for custody of Z.L.S. Instead he requested that the matter be heard on June 27, 2014. On February 25, 2014, the trial court issued an order stating that a hearing would be held on the matter, also on June 27, 2014. The trial court neither gave permission to nor prevented Mother from staying in Washington. On March 5, 2014, Mother filed a motion for a continuance. The continuance was granted and the hearing was reset for July 10, 2014.

[6] Father returned to Indiana on June 10, 2014. A hearing was held on July 10, 2014, and August 19, 2014. On October 13, 2014, the trial court issued its order granting Mother's request to relocate. In its order, the trial court sua sponte issued findings of fact and conclusions of law. The trial court noted that Mother had failed to timely filed a notice of intent to relocate, but it determined that Mother had acted in good faith in relocating and that the relocation was done for a legitimate reason. It also found that the current custody arrangement was in the best interest of Z.L.S. and that Mother would retain primary physical custody. In regards to parenting time, the trial court determined that father was required to notify Mother in writing at least ninety days prior to the first day of his selected visitation to inform her of the date and time he would pick up Z.L.S. Father now appeals.

## Discussion and Decision

## I. Standard of Review

[7] Father argues that the trial court erred when it allowed Mother to relocate. When the trial court enters findings sua sponte, the specific findings control

only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1255 (Ind. Ct. App. 2010). The specific findings will not be set aside unless they are clearly erroneous, and we will affirm the general judgment on any legal theory supported by the evidence. *Id.* A finding is clearly erroneous when there are no facts or inferences drawn therefrom that support it. *Id.* at 1255–56. In reviewing the trial court's findings, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* at 1256. Rather, we consider only the evidence and reasonable inferences drawn therefrom that support the findings. *Id.*

[8] In addition, we review custody modifications for abuse of discretion, with a preference for granting latitude and deference to our trial judges in family law matters. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002). We set aside judgments only when they are clearly erroneous, and we will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. *Id.* Therefore, on appeal it is not enough that the evidence might support some other conclusion; rather, the evidence must positively require the conclusion contended for by appellant before there is a basis for reversal. *Id.*

## II. Notice of Intent to Relocate

[9] Father first argues that the trial court erred when it summarily allowed Mother to relocate. He maintains that the trial court was required to hold a hearing and make findings to support its decision as required by Indiana Code section 31-17-

2.2-6(b). Father is correct that, pursuant to Indiana Code section 31-17-2.2-1(a), a relocating parent must file a notice of intent to relocate and send a copy of that notice to the nonrelocating parent. This notice of intent is required to be sent no later than ninety days before the date the relocating parent intends to move, or, if the relocating individual is unable to provide the information at that time, no later than thirty days before the intended relocation. I.C. § 31-17-2.2-3. A nonrelocating parent may object to the intended relocation in one of two ways: by filing a motion to modify the custody order or by filing, within sixty days of receipt of the notice of intent to relocate, a motion to prevent the relocation of the child. *T.L. v. J.L.*, 950 N.E.2d 779 (Ind. Ct. App. 2011). Upon request of either party, the trial court shall hold a full evidentiary hearing to grant or deny a motion to prevent relocation of the child. I.C. § 31–17–2.2–5(b).

[10] Father argues that the trial court erred when it did not enjoin Mother from relocating to Washington pending the July 10, 2014, hearing on the matter. He argues that the trial court was required to hold a preliminary hearing to determine whether to grant his request for a preliminary order to enjoin Mother from relocating. He states that the trial court failed to follow the required procedure before denying a nonrelocating parent's request to prohibit relocation.

[11] However, this argument mischaracterizes the trial court's actions. The trial court did not deny Father's request to prohibit Mother from relocating without a hearing. Indeed, it was not until after a July 10, 2014, hearing on the matter

that the trial court reached its conclusion. It did not, however, grant Father's request that Mother be enjoined from relocating until the hearing. However, the trial court did not permit mother to relocate to Washington; she went to Washington without the leave of the trial court. It neither gave permission to nor prevented Mother from staying in Washington.

[12] We do recognize that Mother failed to correctly file her notice of intent to relocate. She was required, pursuant to Indiana Code section 31-17-2.2-3, to send that notice to Father at least thirty days before relocating.

[13] However, we also note that Father did not request a preliminary hearing. Instead, he requested that the matter be dealt with at the hearing set for June 27, later continued to July 10. Father did not request an earlier hearing, although one was scheduled for February 14, and Father could have been represented by counsel at that hearing. Father was out of the country at the time he filed his objection to the intent to relocate, and Mother had recently married in Washington. The trial court could have enjoined Mother from staying in Washington with Z.L.S., but she was the only parent currently able to care for Z.L.S. Furthermore, Father did not request custody of Z.L.S., again meaning that Mother was the only parent able to care for her. Under these circumstances, we do understand that the trial court was placed in a difficult position. While it is possible the trial court may have been able to find a better solution in this situation, we cannot think of what that solution might have been. Therefore, we do not find that the trial court erred by allowing the situation to remain as it was until the July 10, 2014, hearing.

# III. The Servicemembers Relief Act

[14] Father next argues that the trial court violated his rights under the Servicemembers Civil Relief Act when it failed to enjoin Mother from relocating to Washington. The Servicemembers Civil Relief Act was "enacted to protect those who have been obliged to drop their own affairs to take up the burdens of the nation from exposure to personal liability without an opportunity to appear and defend in person or through counsel." *Collins v. Collins*, 805 N.E.2d 410, 414 (Ind. Ct. App. 2004) (internal quotations removed). Section 522 of the Act provides that it applies to any civil action or proceeding, including any child custody proceeding, in which the plaintiff or defendant at the time of filing an application under this section 1) is in military service or is within 90 days after termination of or release from military service, and 2) had received notice of the action or proceeding. Section 522 grants court the authority, if certain conditions are met, to stay a proceeding in which a servicemember is a party: "at any stage before final judgment in a civil action or proceeding in which a servicemember described in subsection (a) is a party, the court may on its own motion and shall, upon application by the servicemember, stay the action for a period of not less than [ninety] days." 50 App. U.S.C. § 522.

[15] Father argues that, as the trial court was aware that he was in the military and deployed overseas, it erred when it denied his request to enjoin Mother from relocating to Washington. Father argues that he was harmed when the trial court allowed Mother to relocate without a hearing.

Father again mischaracterizes the trial court's actions in this case. We note that the trial court did not allow Mother to relocate. Mother traveled to Washington without leave of the trial court. The decision to allow Mother to relocate was not made until after the July 10 hearing. Father did not request a preliminary hearing on his request to enjoin mother from staying in Washington pending a hearing on the relocation. Father could have been represented by counsel at a preliminary hearing, but instead, he asked that the trial court set a hearing on the matter for June 27, 2014. Here, the trial court did not make any decisions regarding relocation until after the hearing on July 10, 2014, and, therefore, it did not violate Father's rights under the Servicemembers Relief Act.

# IV. Best Interest of Z.L.S.

Father also argues that the trial court erred in allowing Mother to relocate because relocation was not in the best interest of Z.L.S. As noted above, we will set aside judgments in custody modifications only when they are clearly erroneous, and we will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. *Dixon v. Dixon*, 982 N.E.2d 24, 26 (Ind. Ct. App. 2013). Under the relocation statute, a trial court must make two inquiries:

> First, the relocating parent must establish that the relocation is being made in good faith and for a legitimate reason. Ind. Code § 31–17–2.2–5(c). If the relocating parent satisfies that burden, the burden shifts to the non-relocating parent to show that the proposed relocation is not in the best interests of the child. I.C. § 31–17–2.2–5(d). In general, the trial court must consider the financial impact of relocation on the

affected parties and the motivation for the relocation in addition to the effects on the child, parents, and others, such as siblings or other persons who may significantly affect the children's best interests, as relevant to every change of custody.

*Id.*

In addition, pursuant to Indiana Code section 31-17-2.2-1, the trial court shall consider the following factors:

> (1) The distance involved in the proposed change of residence.
>
> (2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.
>
> (3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.
>
> (4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.
>
> (5) The reasons provided by the:
>
> > (A) relocating individual for seeking relocation; and
> >
> > (B) nonrelocating parent for opposing the relocation of the child.
>
> (6) Other factors affecting the best interest of the child.

Father maintains that the trial court erred in its consideration of these factors.

[18] Father focuses his argument on two issues: 1) he argues that the trial court did not adequately consider Z.L.S.'s interaction and relationships with parents, extended family, friends, and other persons, and 2) he claims that the trial court failed to consider the hardship of the relocation upon Father's parenting time with Z.L.S.

[19] Here, the trial court specifically noted that it "considered the factors set forth in I.C. 31-17-2.2-1 and 31-17-2-8, judged the best interest of the Child and the other conditions and circumstances in the context of the whole environment." Appellant's App. p. 11. In addition, the trial court noted that "there exist certain favorable and unfavorable aspects to each of the [parties'] lives and circumstances." *Id.* It then determined that, based upon the facts of this case, "the evidence does not support the conclusion that relocation is not in the best interest of the Child. The current custody arrangement is in the best interest of the child." *Id.* While the trial court noted that Mother failed to timely file her notice of intent to relocate, it also noted that Father had failed to do so in the past and found that Mother had a good faith and legitimate reason for relocating.

[20] Regarding Z.L.S.'s interaction and relationships with her parents and extended family, the record shows that Mother has always been Z.L.S.'s primary physical caretaker. Z.L.S. has moved several times throughout her short life, and we note that Mother has been the one constant in her life. While Father is correct that Z.L.S. does have extended family in Indiana, Z.L.S. had spent only a year in Indiana while Mother lived with her parents. The record shows that Mother has ensured that Z.L.S. maintains a close relationship with her maternal grandmother through technological means such as Skype. Paternal grandmother also stated that Mother has helped to ensure that Z.L.S. stays in contact while in Washington. Under these circumstances, we cannot say that

the trial court abused its discretion by finding that relocation was in the best interest of Z.L.S.

[21] Regarding the hardship to Father, while we recognize that Washington is far from Indiana, the record shows that Mother is willing to facilitate contact between Father and Z.L.S. The trial court recognized that there would be costs and inconveniences for Father in exercising parenting time, but found that there would not be extreme hardship and expense. The trial court noted that Mother and Brown have also offered to help defray the cost of travel with the "space available" program available to Brown because he is a member of the active duty Guard and Reserve. *Id.* at 13. The program would allow for tickets to be purchased at $30 or $40 a person. The trial court ordered that the parties cooperate in using the "space available" program. *Id.* Clearly, the trial court considered the hardship to Father and determined that the hardship and expense was not such that Mother should be prevented from relocating. We find that the trial court adequately considered the required factors and that it did not err in allowing Mother to relocate.

## V. Advance Notice of Parenting Time

[22] Father also argues that the trial court erred when it required him to give Mother ninety days advance notice of the date and time he will pick up Z.L.S. for parenting time. He maintains that the trial court should not have ordered that his parenting time would be forfeited if he failed to give notice.

[23] Father argues that the automatic forfeiture of his parenting time is a restriction in violation of Indiana Code section 31-17-4-2, which provides:

> The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development."

Father maintains that the trial court did not find that parenting time might endanger Z.L.S.'s physical health or impair her emotional development and that, therefore, the trial court erred in ordering the ninety-day notice requirement.

[24] We find that the notice requirement is not a restriction of the kind contemplated by Indiana Code section 31-17-4-2. The notice requirement was put in place because the trial court was taking into account the fact that visitation in this case will require cross-country travel. Furthermore, Father provides no authority for the proposition that forfeiture for failure to follow a notice requirement is a restriction of parenting time as anticipated by Indiana Code section 31-17-4-2. Therefore, we do not find that the trial court erred in imposing a notice requirement.

The judgment of the trial court is affirmed.

Najam, J., and Friedlander, J., concur.