## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 04 2016, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Penelope M. Edwards
Lawrenceburg, Indiana

ATTORNEY FOR APPELLEE

Jennifer A. Joas
Madison, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Penelope M. Edwards, *Appellant-Petitioner,* | August 4, 2016 |
| v. | Court of Appeals Case No. 15A05-1510-DR-1692 |
| | Appeal from the Dearborn Circuit Court |
| Eric M. Edwards, *Appellee-Respondent.* | The Honorable James D. Humphrey, Judge |
| | Trial Court Cause No. 15C01-0401-DR-14 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Petitioner, Penelope M. Edwards (Mother), appeals the trial court's denial of her motion to modify custody and its finding of contempt in favor of Appellee-Respondent, Eric M. Edwards (Father).

We affirm.

## ISSUES

Mother raises four issues, which we restate as follows:

> (1) Whether the trial court abused its discretion by finding Mother in contempt of court;
>
> (2) Whether the trial court lacked impartiality when applying the trial rules;
>
> (3) Whether the trial court erred in its calculation of Mother's share of unreimbursed medical expenses; and
>
> (4) Whether the trial court abused its discretion by denying Mother's motion to modify custody of the minor children.

## FACTS AND PROCEDURAL HISTORY

During the marriage of Mother and Father, two children were born: J.E., on November 11, 1997, and C.E., on September 9, 2000. A decree of dissolution of the marriage was entered on May 21, 2004, at which time, the parties agreed to joint legal custody of the children, with Mother having primary physical custody. Following a suicide threat by C.E., Father filed for a change of physical custody. As a result, on March 11, 2013, Father was granted physical

custody of J.E. and C.E., with Mother receiving parenting time every other weekend. On February 3, 2014, the trial court reduced Mother's parenting time in accordance with the Indiana Parenting Time Guidelines and ordered C.E. to "continue in individual counseling and counseling with her Mother until released from treatment." (Appellant's App. p. 35). Both parties had to "ensure that their children attend school activities and extra-curricular activities and practices." (Appellant's App. p. 35). Father was to provide insurance for the minor children with all uninsured medical expenses to be paid pursuant to the six percent rule and Father annually paying the first $1,344.72 of those expenses.

[5] At the time of the current proceedings, C.E. was fifteen and entered her freshman year. She is doing well in school and makes consistent grades. To resolve C.E.'s trust issues with Mother and in compliance with the trial court's order, C.E. and Mother participated in joint counseling sessions. However, these joint sessions were discontinued on November 20, 2013, because Mother felt she needed to work on herself to resolve the "anger from having [her] kids taken away from [her]." (Transcript p. 27). C.E. continued individual counseling with Dr. Anthony Barone (Dr. Barone). In a letter to the Guardian Ad Litem, Dr. Barone reported:`

> [C.E.] has benefitted from the structure [and] stability she has received at her [F]ather's house. She is comfortable and happy with the current living situation. It would be very important to [C.E.'s] emotional health to continue with this stable environment with her [F]ather as well as the continuation of visits with her [M]other. She does feel that midweek visits are

sometimes difficult with her schoolwork and would like that changed. [C.E.] should continue with visits every other weekend to her [M]other, with flexibility on the midweek visits. It is important that regular contact with her [M]other continue.

(Respondent's Exh. B).

[6] J.E. is entering his senior year in high school. His plan is to enter the Air Force Academy; he plays a sport in every season, and is involved in various leadership roles. He is enrolled in advanced classes and excels in his schoolwork. He is employed on the weekends. J.E. has a driver's license and is responsible to drive his sister and himself thirty-four miles to school in Indiana from their Father's house in Ohio.

[7] Since the last custodial review, there have been continuing problems with the midweek parenting schedule. Because of his extra-curricular activities, J.E. cannot participate on Tuesdays or Thursdays, whereas Mother cannot be present on Wednesdays because of her volleyball practices. Often, the mid-week visit has to be rescheduled. There have also been recurring problems with the children attending extra-curricular activities while in Mother's care. Mother did not get J.E. to a swim meet in a timely fashion, Mother failed to take C.E. to fundraising activities to help fund her mission trip, and instead of taking J.E. to a varsity track meet, Mother chose to take J.E. to a voluntary boy scout badge day. Because of all these problems, the children's Guardian Ad Litem (GAL) recommended eliminating Mother's midweek parenting time.

[8] On June 25, 2014, Mother filed a motion for modification of physical custody, child support, parenting time, and uninsured medical expenses, alleging that there has been a substantial and continuing change in circumstances and that it would be in the children's best interest for Mother to become their primary physical custodian. In response, Father filed a motion for modification of parenting time, requesting to eliminate the midweek parenting time, as well as a motion for rule to show cause. On February 10, 2015, the trial court conducted a status hearing, at which it ordered the parties to mediation, compelled all discovery, and set a hearing on all pending motions. On May 19, 2015, the trial court conducted a hearing on the parties' motions. On June 22, 2015, the trial court issued its Order denying Mother's motion for modification of physical custody, child support, parenting time, and uninsured medical expenses because "there has not be[en] a substantial and continuing change in circumstances[.]" (Appellant's App. p. 21). In the same Order, the trial court granted Father's modification of parenting time by ordering that Mother "shall no longer receive a midweek parenting time with her children." (Appellant's App. p. 22). In addition, the trial court concluded as follows:

> 4. That [Mother] shall be found in contempt of the [c]ourt's prior order in refusing to reimburse [Father] for the uninsured medical, dental, pharmaceutical, psychological, and optical expenses for the parties' minor children for calendar year 2013 and 2014 as set forth in the [c]ourt's Order of February 3, 2014. [Mother] shall be ordered to reimburse [Father] the sum of $2,148.15 for 2013 expenses . . . and $862.83 for expenses . . . [.]

5. That [Mother] shall be found in contempt of the [c]ourt's order dated February 3, 2014 in refusing to continue joint therapy sessions with [the counselor] and her daughter, [C.E.].

6. That [Mother] shall be found in contempt of the [c]ourt's order dated February 3, 2014 in failing to pay the child support arrearage within the specified 45 days. As of the date of May 18, 2015, [Mother] still owed an arrearage of $210.00. . . [.]

7. That [Mother] shall be found in contempt of the [c]ourt's order of March 11, 2013, for refusing to pay for [C.E.'s] Confirmation costs in the total sum of $113.88 . . . [.]

8. That [Mother] shall be found in contempt of the [c]ourt's prior orders for failing to assist the children in attending their scheduled activities during her periods of parenting time.

9. That as a result of [Mother's] refusal to follow the [c]ourt's prior orders, [Father] has incurred legal fees in order to bring this matter to the [c]ourt's attention. [Mother] shall be required to reimburse [Father] the sum of $500.00 towards legal fees . . . [.]

(Appellant's App. pp. 24-26).

[9] On July 21, 2015, Mother filed a motion to correct error, alleging multiple errors in the trial court's Order. On September 16, 2015, after a hearing, the trial court affirmed its previous Order, with the exception of Mother's child support arrearage where the trial court determined Mother to have "substantially complied with the [c]ourt's order and she is not held in contempt of [c]ourt for willful violation of the [c]ourt's order." (Appellant's App. p. 29).

Mother now appeals.  Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Contempt of Court*

Mother contends that the trial court abused its discretion by finding her in contempt of court where Father's motion for rule to show cause was unverified. Contempt of court "involves disobedience of a court which undermines the court's authority, justice and dignity." *Henderson v. Henderson*, 919 N.E.2d 1207, 1210 (Ind. Ct. App. 2010) (citing *Srivastava v. Indianapolis Hebrew Congregation, Inc.* 779 N.E.2d 52, 60 (Ind. Ct. App. 2002), *trans. denied*).  There are two types of contempt:  direct and indirect.  *Id*.  Direct contempt involves actions occurring near the court that interfere with the business of the court and of which the judge has personal knowledge.  *Id*.  Contempt is indirect if it involves actions outside the trial court's personal knowledge.  *Id*.  "Willful disobedience of any lawfully entered court order of which the offender had notice is indirect contempt."  *Id* (citing *Francies v. Francies*, 759 N.E.2d 1106, 1118 (Ind. Ct. App. 2001), *reh'g denied, trans. denied*).  The determination of whether a party is in contempt of court is a matter within the trial court's discretion and the trial court's decision will only be reversed for an abuse of discretion.  *Piercey v. Piercey*, 727 N.E.2d 26, 31 (Ind. Ct. App. 2000).

Father filed his motion for rule to show cause on September 5, 2014, alleging that Mother failed to participate in joint therapy with C.E. as ordered, failed to reimburse Father for uninsured medical expenses as ordered, failed to pay the

child support arrearage within the specified time period, and failed to take the children to their scheduled extracurricular activities. Mother asserts that she was denied due process because Father's motion was unverified by an oath of affirmation and therefore, "[t]he [t]rial [c]ourt did not have jurisdiction to order a rule." (Appellant's Br. p. 25).

[13] An indirect contempt proceeding requires an array of due process protections, including notice and the opportunity to be heard. *In re Contempt of Wabash Valley Hosp., Inc.*, 827 N.E.2d 50, 62 (Ind. Ct. App. 2005). These protections are provided by the court's compliance with Ind. Code § 34-47-3-5, which provides:

> (a) In all cases of indirect contempt, the person charged with indirect contempt is entitled:
>
> (1) Before answering the charge; or
>
> (2) Being punished for the contempt;
>
> To be served with a rule of the court against which the contempt was alleged to have been committed.
>
> (b) The rule to show cause must:
>
> (1) Clearly and distinctly set forth the facts that are alleged to constitute the contempt;

(2) Specify the time and place of the facts with reasonable certainty, as to inform the defendant of the nature and circumstances of the charge against the defendant; and

(3) Specify a time and place at which the defendant is required to show cause, in the court, why the defendant should not be attached and punished for such contempt.

(c) The court shall, on proper showing, extend the time provided under subsection (b)(3) to give the defendant a reasonable and just opportunity to be purged of the contempt.

(d) A rule provided for under subsection (b) may not issue until the facts alleged to constitute the contempt have been:

(1) Brought to the knowledge of the court by an information; and

(2) Duly verified by the oath of affirmation of some officers of the court or other responsible person.

[14] If no rule to show cause is issued in compliance with this statute, a court may lack the authority to hold a person in contempt. *In re Paternity of J.T.I.*, 875 N.E.2d 447, 451 (Ind. Ct. App. 2007). Strict compliance with the rule to show cause statute may be excused if it is clear the alleged contemnor had notice of the accusations against him, for example because he received a copy of an original contempt information that contained detailed factual allegations, or if he appears at the contempt hearing and admits to the factual basis for a contempt hearing. *Id.* at 450-51.

[15] Here, Father filed his unverified motion for rule to show cause on September 5, 2014. The motion contains a certificate of service, indicating it was served on Mother by first class postage mail. Neither the record nor the chronological case summary (CCS) includes the trial court's rule to show cause hearing. Nonetheless, during the hearing on May 19, 2015, both parties affirmed to the trial court that they came prepared to discuss Father's motion. Accordingly, besides the other motions discussed at the hearing, the trial court heard evidence on Father's claim to hold Mother in contempt. Father's motion had advised Mother in detail of the factual allegations of contempt and Mother had ample opportunity to present her own evidence and question Father's evidence, which she availed herself of at the hearing. At no point did Mother object to the discussion of Father's motion on due process grounds. While Father's motion is unverified and the trial court did not conduct a separate rule to show cause hearing regarding the motion, under the circumstances before us, we are satisfied that Mother's due process rights were protected. *See Lasater v. Lasater*, 809 N.E.2d 380, 386 (Ind. Ct. App. 2004) (finding no due process violation where the trial court did not conduct a separate rule to show cause hearing). Furthermore, Mother does not claim that she was prejudiced in any way by the trial court's evidentiary hearing on Father's motion without first having the rule to show cause hearing. Based on the contentious nature of the case and the numerous filings before it, it was both reasonable and efficient for the trial court to proceed as it did. *See id*. We cannot conclude that Mother's due process rights were violated.

## II. *Application of the Trial Rules*

Next, Mother claims that the trial court's application of the trial rules showed a lack of impartiality, in violation of Indiana Judicial Canon 2. Judicial Canon 2 states that "[a] Judge shall perform the duties of judicial office impartially, competently, and diligently." Judges must be "objective and open-minded." Ind. Judicial Conduct Rule 2.2, cmt. 1. The public entrusts the judiciary "to provide a tribunal as superior to influence as possible, in which a claim might be decided." *Matter of Guardianship of Garrard*, 624 N.E.2d 68, 70 (Ind. Ct. App. 1993). While the trial judge may have justly and correctly decided the case at bar, the appearance of impropriety requires reversal. *Id*. Generally, a judge must disqualify himself when there exists a reasonable question regarding his impartiality. *Id*. Thus, our review should focus on "whether an objective person, knowledgeable of all the circumstances, would have a rational basis for doubting the judge's impartiality." *Patterson v. State*, 926 N.E.2d 90, 94 (Ind. Ct. App. 2010). In other words, the question is not whether the judge's impartiality is impaired in fact, but whether there exists a reasonable basis for questioning a judge's impartiality. *Bell v. State*, 655 N.E.2d 129, 132 (Ind. Ct. App. 1995).

Mother directs our attention to several instances of perceived impartiality. Specifically, Mother contends that the trial court inconsistently applied the trial court rules when it allowed Father to request a change in the dependents for tax purposes during the hearing, while it denied her move for attorney fees. She asserts that she was found in contempt on an issue not included in Father's

motion for rule to show cause and she claims that while the trial court "made an extensive statement of clarification regarding complying with [d]iscovery directed at her," the trial court "completely failed to address [her] concern over evidence not turned over [by Father] in [d]iscovery." (Appellant's Br. p. 27).

[18] Mother's specific contentions sound more like disagreements with the trial court's rulings on these particular issues than allegations of bias. Our review of the record indicates that the trial court ruled in favor of and against both parties; we did not find any instances where partiality or bias could be perceived. Rather, the record discloses a contested hearing in which the trial court had to frequently rule for or against a party on a multitude of different issues. A mere negative ruling by the trial court does not amount to a biased tribunal. Based on the circumstances before us, we cannot find a reasonable basis to doubt the trial court's impartiality. *See Patterson*, 926 N.E.2d at 94.

### III. *Unreimbursed Medical Expenses*

[19] Next, Mother treats us to a rambling discourse about unreimbursed medical expenses, at the source of which is an alleged discovery violation and a misunderstanding about the health reimbursement account (HRA).

[20] First, Mother contends that Father failed to timely disclose the children's dental expenses. Specifically, she asserts that Father had "provided nothing to [her] regarding these dental expenses beyond a number on a list." (Appellant's Br. p. 29). However, Mother never raised this argument at trial. During the hearing, Father's counsel requested the trial court to admit the listing of the 2013 and

2014 uninsured medical expenses. Father affirmed that he had previously provided this documentation to Mother. Mother never objected nor did she question Father on this issue during cross-examination or request a continuance to examine the documents. Accordingly, Mother has waived the claim for our review. *See Farley Neighborhood Ass'n v. Town of Speedway*, 765 N.E.2d 1226, 1231 (Ind. 2002) (a party waived its argument regarding a discovery violation where the party did not object to admission of the document or request a continuance).

[21] Next, Mother makes a convoluted argument, in essence claiming that she overpaid her share of the unreimbursed dental expenses. In particular, Mother claims that because certain expenses were paid through Father's HRA, these were not paid by Father himself and therefore cannot be categorized as unreimbursed expenses. During the hearing on Mother's motion to correct error, the parties clarified that Father has a United Healthcare Choice Plus Plan with an HRA. The HRA is "owned and funded by" Father's employer to help "pay for covered health care services." (Appellant's Exh. 3 MTCE[1]). These funds are available to Father to pay for his own and his children's health care expenses. The HRA is used in conjunction with a high deductible insurance plan to keep health care premiums low. Until it is depleted, the HRA automatically pays for the covered service until the deductible is met; once the deductible is met, Father's health insurance covers the bills. On the other hand,

---

[1] We will refer to the transcript and exhibits of the hearing on Mother's motion to correct error as MTCE.

if the entire HRA is depleted within a covered period, the remaining uninsured medical expenses will be paid out-of-pocket by Father until the deductible is met. Even though the HRA is owned by Father's employer, any funds not used in a particular year, roll over to the following year.

[22] The HRA is an employer-provided benefit and is part of Father's remuneration package. Mother's argument would require Father to use all of his HRA benefits for the children at the expense of foregoing these benefits for himself and before Mother would incur any responsibility towards the children's uninsured medical expenses. The trial court's Order clearly directed Mother to carry her share of the uninsured medical expenses, calculated pursuant to the six percent rule. Whether these uninsured medical expenses were paid by Father's HRA or out-of-pocket is immaterial and of no consequence. Ultimately, uninsured medical expenses were incurred by the children, and both parents share responsibility for these costs.

[23] Lastly, Mother disputes that Father failed to mention the refund checks he received from the dentist after the insurance company processed the claim. These refund checks are for $772 and $1,570 and include the annotation "overpayment refund." (Appellant's Exh. 1 MTCE). However, besides this annotation, Mother did not present any evidence whether this refund represented the children's dental expenses or Father's. The trial court heard the evidence during the hearing on Mother's motion to correct error, took Mother's evidence into account, and affirmed its original decision. We refuse to disturb the trial court's ruling.

IV. *Modification of Custody*

[24] Mother argues that the trial court abused its discretion by denying her motion for modification of custody. Traditionally, we give wide latitude to our trial courts in family-law matters, and we review a trial court's custody determination for an abuse of discretion. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1256 (Ind. Ct. App. 2010). We neither reweigh the evidence nor assess witness credibility. *Id*. Rather, we consider only the evidence and inferences most favorable to the trial court's judgment. *Id*. The party seeking to modify custody has the burden of demonstrating that the existing custody arrangement should be altered. *Id.*

[25] Our legislature has defined the circumstances under which a custody order may be modified, providing in relevant part:

> (a) The Court may not modify a child custody order unless:
>
> > (1) The modification is in the best interests of the child; and
> >
> > (2) There is a substantial change in one (1) or more of the factors that the court may consider under section 8 and, if applicable section 8.5 of this chapter.
>
> (b) In making its determination, the court shall consider the factors listed under section 8 of this chapter.

Ind. Code § 31-17-2-21. Indiana Code section 31-17-2-8 specifies that a trial court is to consider all relevant factors, including:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with

   (A) The child's parent or parents

   (B) The child's sibling; and

   (C) Any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

   (A) Home;

   (B) School; and

   (C) Community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

[26] In its denial of Mother's motion for modification of custody, the trial court did not enter, nor did the parties request, specific findings of fact. When reviewing a general judgment, we will affirm if the judgment can be sustained on any legal theory supported by the evidence. *See In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014), *reh'g denied*.

[27] The record supports the trial court's denial of Mother's motion to modify custody, finding that "there ha[d] not be[en] a substantial and continuing change in circumstances that warrants the change in physical custody." (Appellant's App. p. 41). The trial court did change Mother's parenting time, eliminating the midweek visits. During the hearing on Mother's motion, the children's GAL advised against modifying physical custody in favor of Mother. Likewise, C.E.'s therapist did not recommend a change in custody. Since changing physical custody to Father on March 11, 2013, the children are attending school regularly, are doing well in their coursework, and are involved in extracurricular activities. J.E. has a definite plan for his future and is working diligently towards attaining that goal.

[28] Mother argues that Father is actively alienating her from the children and excluding her from their lives. She disputes the GAL's recommendation and instead references the report of her own psychologist, which contradicts the GAL's and the trial court's conclusion. However, the trial court was presented with this conflicting evidence and decided to deny Mother's motion. Accordingly, Mother's argument is nothing more than an invitation to reweigh the evidence and assess witness credibility, which we decline.

## CONCLUSION

Based on the foregoing, we conclude that (1) Mother was properly found in contempt of court; (2) the trial court impartially applied the trial rules; (3) the trial court properly calculated Mother's share of unreimbursed medical expenses; and (4) the trial court did not abuse its discretion by denying Mother's motion to modify custody.

Affirmed.

Kirsch, J. and Pyle, J. concur