## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 30 2017, 5:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT *PRO SE*

Janet P. Hixson
Charlotte, North Carolina

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Janet P. Hixson, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Doyle L. Silvers, <br> *Appellee-Respondent* | August 30, 2017 <br><br> Court of Appeals Case No. <br> 85A05-1701-DR-138 <br><br> Appeal from the Wabash Superior Court <br><br> The Honorable Robert R. McCallen, III, Special Judge <br><br> Trial Court Cause No. <br> 85D01-0706-DR-207 |

**May, Judge.**

[1] Janet P. Hixson ("Mother") appeals the trial court's order granting Doyle L. Silvers ("Father") custody. We affirm.

# Facts and Procedural History

[2] Mother and Father married in 1999. Two children were born of the marriage, A.L.S.,[1] born May 29, 2000, and L.S., born February 12, 2005 (collectively, "Children"). The marriage was dissolved on April 21, 2009. Mother subsequently married Richard Hixson ("Stepfather") and moved to North Carolina. Father lives in Indiana.

[3] The trial court initially awarded Mother custody of Children. On July 29, 2013, Father filed a petition to modify custody. Mother filed a verified information on contempt on October 23, 2013, and Father filed the same on December 27, 2013; June 10, 2014; and June 30, 2014. Both parties also filed claims for Guardian ad Litem ("GAL") fees. The trial court held a hearing on all matters on September 16 and 18, 2014.

---

[1] In the trial court's order, A.L.S. is referred to as either his first or middle name, as he is called by a different name based on which parent has custody. The trial court noted in its order:

> While at his Mother's home, the parties' son is referred to as [L.]. While at his Father's home, he is referred to as [A.]. Anyone put in this boy's situation would not know who he is, where his loyalties should lie, and would probably not like himself very much.

(App. at 75.) We refer to him as A.L.S. throughout.

In an order on September 18, 2014, the trial court "reluctantly awarded temporary custody of the parties' minor children to Father." (App. at 72.) In doing so, the trial court entered detailed findings and concluded:

> 34. Although it is a close call, the Court finds that a modification of the prior custody order, by awarding custody to Father temporarily, subject to further hearing, would be in the best interests of the parties' minor children. The primary reason for this finding is the fact that conflict in the Hixson home is impacting the parties' son in a profoundly negative way.

> 35. There have also been substantial changes in the statutory factors[2] listed above as follows:

>> (a) [A.L.S] is now 14, he is now five years older than he was when custody was awarded to Mother. He would benefit from having a more significant relationship with Father as he struggles through the difficulties of adolescence. This is particularly true given his relationship with [Stepfather].

>> (b) [A.L.S.] is now 14 and wants to live with his Father.

>> (c) The relationship between [A.L.S.] and [Stepfather] has deteriorated to the point that the boy is running away and making false 911 calls to avoid returning to the home.

>> (d) There is evidence of a pattern of domestic violence in [Mother's] home. Even if it is not physical violence, as

---

2 This refers to Indiana Code section 31-17-2-8, which requires the trial court to consider eight factors when modifying child custody.

[Mother and Stepfather] maintain, the level and frequency of their disputes is profoundly disrupting the lives of the parties' children and is impeding their emotional development.

36. The Court therefore modifies its prior custody order and now awards temporary custody of the parties' minor children, [A.L.S.] (born May 29, 2000) and [Ly.S.] (born Feb. 12, 2005) to [Father], effective September 22, 2014, subject to further order of the Court.

(App. at 76-7) (footnote in original omitted, footnote added). The trial court ordered Father to enroll Children in counseling, set forth a schedule for holiday visitation subject to the GAL's recommendations, and required the parties to participate in monthly status hearings.

After the trial court's order, the parties continued to have issues communicating and disagreements regarding holiday visitation. Near the end of 2014, a protective order was issued restricting Stepfather from having contact with A.L.S. On April 10, 2015, the Department of Child Services ("DCS") filed a petition to declare Children were in need of services ("CHINS") following a physical altercation between A.L.S. and Father. Children were removed from Father's home and placed in foster care for a short time because Children could not reside with Mother due to the active protective order involving Stepfather and A.L.S. When the CHINS case concluded, Children were returned to Father on April 1, 2016.

[6] On November 17, 2016, the trial court held a hearing on modification of permanent custody of Children. The same day, the trial court issued an order awarding permanent custody of Children to Father and requiring Mother to pay child support.

# Discussion and Decision

[7] We first note Mother proceeds in this appeal *pro se*. A litigant who proceeds *pro se* is held to the same established rules of procedure that trained counsel is bound to follow. *Smith v. Donahue*, 907 N.E.2d 553, 555 (Ind. Ct. App. 2009), *trans. denied*, *cert. dismissed*. One risk a litigant takes when she proceeds *pro se* is that she will not know how to accomplish all the things an attorney would know how to accomplish. *Id*. When a party elects to represent herself, there is no reason for us to indulge in any benevolent presumption on her behalf or to waive any rule for the orderly and proper conduct of her appeal. *Foley v. Mannor*, 844 N.E.2d 494, 502 (Ind. Ct. App. 2006).

[8] Additionally, we note Father did not file a brief. When an appellee does not submit a brief, we do not undertake the burden of developing arguments for that party. *Thurman v. Thurman*, 777 N.E.2d 41, 42 (Ind. Ct. App. 2002). Instead, we apply a less stringent standard of review and may reverse if the appellant establishes *prima facie* error. *Id*. *Prima facie* error is "error at first sight, on first appearance, or on the face of it." *Van Wieren v. Van Wieren*, 858 N.E.2d 216, 221 (Ind. Ct. App. 2006).

[9]     When a party requests modification of custody, we review the court's decision for an abuse of discretion, because we give wide latitude to our trial court judges in family law matters. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1256 (Ind. Ct. App. 2010). A petitioner seeking modification has the burden to demonstrate the existing custody arrangement needs to be altered. *Id.* As we undertake our review, we neither reweigh the evidence nor assess witness credibility. *Id.* Rather, we consider only the evidence and inferences most favorable to the trial court's judgment. *Id.*

[10]    Our legislature has defined the circumstances under which a custody order may be modified:

> (a) The court may not modify a child custody order unless:
>
> > (1) the modification is in the best interests of the child; and
> >
> > (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 and, if applicable, section 8.5 of this chapter.
>
> (b) In making its determination, the court shall consider the factors listed under section 8 of this chapter.

Ind. Code § 31-17-2-21 ("Section 21"). The factors the court must consider under Ind. Code § 31-17-2-8 ("Section 8") include:

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

> (A) the child's parent or parents;

> (B) the child's sibling; and

> (C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

> (A) home;

> (B) school; and

> (C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

[11] The trial court concluded "many substantial and continuing changes have occurred since the initial award of custody to [Mother], making such permanent

award of custody to [Father] in the children's best interests." (App. at 63.) To support that conclusion, the trial court found:

> In that [Mother] chose to call the parties' son, [A.L.S.], as a witness, the Court declined to conduct an in-camera interview of either [A.L.S.] or [L.S.]. The Court believes that placing [A.L.S.] on the witness stand was not in his best interests and, frankly, showed a callous disregard for his well-being. He was clearly conflicted by being called as a witness. While he expressed some interest in living with [Mother], at least for awhile to help her, it was for all the wrong reasons. Clearly the [Mother] has laid a guilt trip on [A.L.S.].

> The Court declines to order any unsupervised parenting time or contact between [Mother] and the children. Instead, the Court orders the parties to continue counseling with Ed Pereria, with the goal of expanding [Mother's] contact with the children and ultimately full parenting time. Had the [Mother] kept her word that she was no longer contesting custody, which she gave in a counseling session on or about October 4, 2016, and further engaged in the joint counseling to address her contact and parenting time as was also discussed, progress toward this goal would likely have already occurred. Instead, that opportunity has been wasted.

(*Id.* at 63-4.)

[12] Mother argues the trial court's decision to award Father permanent custody of Children is not supported by the evidence. However, her argument consists of statements unsupported by the record, *e.g.*, "Depriving [L.S.] of contact with her Mother during this important developmental period is not in her best interests," (Br. of Appellant at 30); strategically selected statements by A.L.S.

taken out of context; and criticisms of the trial court's findings, *e.g.*, "[the court's] observations are not based on evidence but are a byproduct of one's prejudice and agenda." (*Id.* at 33.) Her contentions are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See Julie C.*, 924 N.E.2d at 1256 (appellate court does not reweigh evidence or judge the credibility of witnesses).

[13] There was sufficient evidence to support the trial court's decision. Father was granted temporary custody because of allegations of abuse by Stepfather. After the temporary change in custody, A.L.S. began attending counseling with Pereria. Father participated in counseling on a regular basis, Mother did so sporadically. Mother and Stepfather did not present evidence they had done anything to address the abuse allegations, such as attend counseling. Father and A.L.S. were the subject of a DCS investigation following a physical altercation between Father and A.L.S., but that has since been resolved and Father and A.L.S. were working through those issues in counseling. Father reported both Children were on the honor roll at school and A.L.S. was involved in extracurricular activities. We conclude the trial court did not abuse its discretion when it awarded Father custody of Children.[3] *See In re Marriage of*

---

[3] Mother also argues the trial court made several errors in computing the amount of child support she owed Father. Some of these errors she claims to have presented to court as part of her motion to correct errors. However, she did not include a copy of that document in the record, so we are unable to determine if the trial court erred by denying her motion. Further, the record we have before us does not indicate Mother presented argument regarding the amount of child support at the hearing on modification. Thus, she has waived the issue of the amount of child support for failure to provide a complete record and for failure to present the issue regarding the trial court's computation of the child support amount before the trial court. *See* Ind. App. R. 46(A)(8)(a) (argument must be supported by citations to relevant parts of the record); *see also Leone v.*

*Sutton*, 16 N.E.3d 481, 486 (Ind. Ct. App. 2014) (modification of custody affirmed because evidence of Section 8 factors supported modification of custody to father).

# Conclusion

The trial court did not abuse its discretion when it awarded permanent custody to Father. We affirm.

Affirmed.

Brown, J., and Pyle, J., concur.

---

*Keesling*, 858 N.E.2d 1009, 1014 (Ind. Ct. App. 2006) (failure to provide cogent argument or citations to relevant parts of the record waives the issue for appellate review), *trans. denied*; *and see Van Winkle v. Nash*, 761 N.E.2d 856, 859 (Ind. Ct. App. 2002) (party's failure to raise issue before the trial court results in waiver of that issue on appeal).

Similarly, Mother contends the trial court committed several procedural errors, including: "Not providing Reports as required," "Withholding Evidence," "Delay in hearing," and "Coercion." (Br. of Appellant at 18.) Mother did not raise these issues before the trial court. They are waived. *See Van Winkle*, 761 N.E.2d at 859 (party's failure to raise issue before the trial court results in waiver of that issue on appeal).